Scott KELLOG, Plaintiff/Appellant,

v.

Kenneth KELLOG, Jr.,
Defendant/Respondent.

No. 74760.

Missouri Court of Appeals,
Eastern District,
Division Three.

April 27, 1999.

James E. Lownsdale, Brandenburg & Lownsdale, St. Louis, for appellant.

Jon R. Sanner, Brinker & Doyen, L.L.P., St. Louis, for respondent.

KATHIANNE KNAUP CRANE, Judge.

In this case plaintiff, Scott Kellog, did not file his claim to recover damages for negligence against his stepfather, defendant Kenneth Kellog, Jr., until over six years after his damages were sustained. The trial court entered summary judgment in defendant's favor on the ground that the action was barred by the five year statute of limitations applicable to personal injury actions, Section 516.120 RSMo (1994). It further found that plaintiff failed to raise a genuine issue of fact that he was "mentally incapacitated", as that term is used in the tolling statute, Section 516.170 RSMo (1994), for the two years following his injury. Plaintiff appeals, primarily contending that genuine issues of fact remain on the question of his mental incapacity. We affirm.

Plaintiff filed an action on April 11, 1996 to recover damages from multiple defendants [1] for negligence and medical malpractice. He alleged that he was a hemophiliac and that while he was in defendant's care, defendant sent him outside to get firewood where he slipped on ice and fell, causing him to bleed continuously. He suffered an infection while being treated at St. Louis University Medical Center which required the amputation of his right leg in March, 1990. He alleged that defendant was negligent in sending him outside, in failing to clear the ice, and in failing to promptly seek medical assistance for him. Plaintiff also alleged that the statute of limitations should be tolled because his injuries kept him from recognizing, prosecuting, or protecting his legal rights.

Defendant moved for summary judgment on the grounds that plaintiff's cause of action

was barred by the applicable statute of limitations and that plaintiff was not "mentally incapacitated" so as to toll the statute of limitations under Section 516.170. The trial court granted the motion. It determined that plaintiff did not present sufficient evidence to raise a question of fact on the issue of mental incapacity. It further found plaintiff's affidavits to be based on conclusions and not on facts which would allow a finder of fact to determine that plaintiff was mentally incapacitated.

## DISCUSSION

I. *Propriety of Summary Judgment on the Issue of "Mentally Incapacitated"*

For his first point plaintiff argues the trial court failed to adequately define, interpret, and apply the term "mentally incapacitated" as used in Section 516.170 RSMo (1994). Plaintiff contends that, no matter what definition of "mentally incapacitated" is used, the record established plaintiff was "mentally incapacitated" so as to invoke the tolling provisions of Section 516.170. For his second point plaintiff asserts that the trial court overlooked and ignored genuine issues of material fact which precluded summary judgment on the issue of mental incapacity. Considered together, these points raise two issues: the meaning of the term "mentally incapacitated" and whether the undisputed facts in the summary judgment record supported a finding that plaintiff was not "mentally incapacitated" as a matter of law.

A. *Meaning of "Mentally Incapacitated"*

The legislature did not define the term "mentally incapacitated" as used in Section 516.170. We are thus guided by the rule that "[w]ords and phrases shall be taken in their plain or ordinary and usual sense, but technical words and phrases having a peculiar and appropriate meaning in law shall be understood according to their technical import." Section 1.090 RSMo (1994); *Bartareau v. Executive Business Products, Inc.*, 846 S.W.2d 248, 249 (Mo.App.1993).

Prior to its 1983 revision, Section 516.170 provided:

1. Only defendant Kenneth Kellog, Jr. remains a party defendant to this action.

If any person entitled to bring an action in sections 516.100 to 516.370 specified, at the time the cause of action accrued be either within the age of twenty-one years, or insane, or imprisoned on a criminal charge, or in execution under a sentence of a criminal court for a less term than for his natural life, such persons shall be at liberty to bring such actions within the respective times in sections 516.100 to 516.370 limited after such disability is removed.

The Missouri Supreme Court interpreted "insane" as used in this version of Section 516.170 as follows: "Unsoundness of mind has been judicially declared to be synonymous with 'insanity.' It exists where there is an essential privation of the reasoning faculties, or where a person is incapable of understanding and acting with discretion in the ordinary affairs of life." *Fendler v. Roy*, 331 Mo. 1083, 58 S.W.2d 459, 464 (1932). In Fiandaca v. Niehaus, 570 S.W.2d 714, 717 (Mo.App.1978), we held, "[t]hat a person is old, infirm, has a weakened mind, impaired mental capacities and is subject to influence and domination by her children does not establish that she is insane."

In 1983 the Missouri legislature made a comprehensive revision of the probate code as it relates to guardianship.[2] The bill changed the nomenclature of guardianship proceedings in Chapter 475 by omitting stigmatizing vocabulary and replacing those terms with "incapacitated" and "disabled".[3] The definitions of the new terms provided a functional approach to the guardianship process based upon a person's specific abilities and disabilities.[4]

The bill also removed stigmatizing language in numerous other statutes which previously used terms such as "incompetent" and "insanity" and substituted forms of the word "incapacity."[5] In Section 516.170, the statute at issue in this case, the term "mentally incapacitated" was substituted for the word "insane."

At the time it substituted "mentally incapacitated" in Section 516.170, the legislature also made mental incapacity a condition which made a person ineligible to vote, Section 115.133.2; operated as a waiver of a person's right to a jury trial in civil actions, Section 510.190.4; qualified a person for guardianship, Section 475.030.1; made a person incompetent to testify, Section 491.060; was a ground for removal of a personal representative, Section 473.140; and required that a guardian ad litem be appointed for a person interested in the probate of a will, Section 473.083.2. The legislature has also used "mentally incapacitated" to describe the condition which entitled a child to child support after emancipation, Section 452.340.4; or excused a child from attending school, Section 167.031.1(1).

Also, at the time the term "mentally incapacitated" was added to Section 516.170, Black's Law Dictionary defined "mental incapacity" the same way the Missouri Supreme Court had previously defined "insanity": "Such is established when there is found to exist an essential privation of reasoning faculties, or when a person is incapable of understanding and acting with discretion in the ordinary affairs of life." BLACKS LAW DICTIONARY 889 (5th ed.1979).

In discussing the current version of Section 516.170, our supreme court has described mentally incapacitated persons as those who, although they have a right to file a suit, have a disability which prevents meaningful access to the courts. *Wheeler v. Briggs*, 941 S.W.2d 512, 515 (Mo. banc 1997). "The legislature, in recognition of this practical inability to bring suit, included mentally

---

2. *See* Laws of Missouri 1983, H.C.S.S.C.S.S.B. 44 and 45, pp. 804–906.

3. John A. Borron, *The Guardianship Code Revision—An Overview*, 39 J. Mo. BAR 453, 454 (1983); I MISSOURI GUARDIANSHIP AND TRUST LAW Section 1.9 (Mo. Bar 1985, 1987, Supp.1993).

4. *See supra*, note 3.

5. I MISSOURI GUARDIANSHIP AND TRUST LAW Section 1.9; *see also, e.g.*, Section 70.661 in which "totally incapacitated" was substituted for "incompetent" and "incapacity" was substituted for "incompetency"; Section 473.083.2 in which "mentally incapacitated person" was substituted for "person of unsound mind"; and Sections 473.140 and 491.060(1) in which "mentally incapacitated" was substituted for "insane". *See also*, Borron, *supra*, note 10 at 461.

incapacitated persons in the tolling provisions of Section 516.170...." *Id.*

■ In light of the above, we conclude that the substitution of "mentally incapacitated" for "insane" did not substantively change this statute. *See Estate of Brown v. Fulp,* 718 S.W.2d 588, 590 (Mo.App.1986) (construing substitution of "mentally incapacitated" for "insane" in the 1983 revision to The Dead Man's Statute, Section 491.010 (1983 Supp.)). Therefore, a plaintiff who seeks to toll a limitations period due to mental incapacity must set forth facts which show that plaintiff was deprived of an ability to reason or was unable to understand and act with discretion in the ordinary affairs of life, which disability prevented plaintiff from bringing suit.

B. *Propriety of Summary Judgment on Issue of Mental Incapacity*

In his motion for summary judgment, defendant set out facts, supported by his affidavit and references to plaintiff's deposition, which showed that plaintiff was not mentally incapacitated. Defendant alleged plaintiff's ability to handle his affairs, care for himself, get a driver's license, attend college, and obtain employment during the five years after his injury. Defendant further averred that plaintiff had lived in defendant's household continuously until 1993 and that he was unaware that plaintiff had ever suffered or been treated for any mental or psychological illness or disability. Specifically, with respect to the two years after the injury, defendant referenced plaintiff's deposition testimony that, although he did not leave his house during those two years, he bathed, he made out a grocery list which he gave to his mother along with his food stamps so she could get groceries for him, he prepared his own meals in his room, he fed himself, and he sometimes joined the family for meals.

■ Because defendant met his burden and showed the existence of facts necessary to support the bar of the statute of limitations, plaintiff could not rest upon the mere allegations or denials in his pleading, but his response, by affidavits or as otherwise provided in Rule 74.04, had to set forth specific facts showing that there existed a genuine issue for trial. *ITT Com. Fin. Corp. v. Mid-*

*Am. Marine Supply Corp.,* 854 S.W.2d 371, 376 (Mo. banc 1993); Rule 74.04(e). As the party claiming the exemption, plaintiff had the burden of showing exemption from the operation of the statute of limitations. *Woodruff v. Shores,* 354 Mo. 742, 190 S.W.2d 994, 995 (1945); *Campbell v. Laclede Gas Co.,* 84 Mo. 352, 375–76 (1884), *aff'd* 119 U.S. 445, 7 S.Ct. 278, 30 L.Ed. 459 (1886). Further, because the law favors statutes of limitations, exceptions are strictly construed. *Chambers v. Nelson,* 737 S.W.2d 225, 227 (Mo.App.1987). We are not at liberty to extend them, even in cases of hardship. *Id.*

Therefore, to survive summary judgment, plaintiff's response to defendant's motion, by affidavits or as otherwise provided in Rule 74.04, had to set forth specific facts showing that there existed a genuine issue that 1) he was deprived of his reasoning faculties or 2) that he was incapable of understanding or acting with discretion in the ordinary affairs of his life.

In his response to defendant's motion, plaintiff argued that his action was not barred by the statute of limitations because he was "mentally incapacitated" for the two years following the amputation. He cited portions of his deposition where he testified that he did not leave home for two years following the amputation, that he could not recall the date of the incident, or what was said to him that night. He attached as exhibits his affidavit and that of a psychologist. Plaintiff's affidavit averred as follows:

1. I was injured in December, 1989, at my stepfather's house.
2. I am a hemophiliac, and my injury led to the amputation of my leg in March, 1990.
3. The amputation of my leg was an extremely traumatic event in my life, and devastated me for years. Before the amputation, I was leading a normal life, fully independent, in charge of my affairs.
4. For nearly 4½ years following the amputation, I had frequent recurrent dreams and recollections of the trauma, and such recollections have been so distressing that I avoided even the slightest reminders of events leading up to the amputation of my leg.

5. For 2 years following the amputation, I was completely unable to function, both mentally and physically, because of the stress from the trauma. I rarely left my room. I could not concentrate. I could not consider my legal rights in any way because the ordeal reminded me of the trauma.

The psychologist, Herbert Berger, attested as follows:

1. I am a licensed psychologist, practicing in the County of St. Louis, State of Missouri, for twenty years. A copy of my Curriculum Vitae is attached hereto.

2. I have conducted a psychological screening of the Plaintiff, Scott Kellog, on October 12, 1996.

3. Based upon my screening, it is my opinion that Scott Kellog suffered such a mental incapacity, as a result of the amputation of his leg, as to render him impaired and unable to exercise his rights, and his psychological state rendered him incapable of seeking help for at least 2-1/2 years following said amputation.

The legal file also contains a supplemental affidavit signed by plaintiff. Although it is not file stamped, the parties stipulated that it was before the court on the motion for summary judgment.[6]

1. During my visit with Dr. Berger, we discussed, in detail, my life situation during the first 3 years after my amputation, the years 1990–1992. Dr. Berger asked a lot of questions regarding my ability to function during that period of time, and he wrote down everything I said.

2. During the time period 1990–1992, I was incapable of handling even my basic needs of daily life, or of understanding the ordinary affairs of life.

3. I relied upon others, exclusively, to provide me food, clothing, shelter, and safety, from the time I came home from the hospital (March 1990), to about summer/fall of 1992.

4. I was incapable of doing anything except sitting in my room, watching TV, occasionally bathing, and fixing meals, from December 1991, through about summer/fall, 1992.

5. During this time period, I was mentally incapable of understanding my responsibilities to myself as a person, my rights, or my own health and welfare.

6. During this time period of my life, I was mentally incapable of making such simple decisions as when to get out of bed, or choosing what and when to eat, let alone such decisions as how I would make any money, or what I would do to survive another day.

7. During this time period, even the thought of going out and doing anything frightened me, and made me feel such overwhelming insecurity that I wanted to end my life. I was afraid of my hemophilia, that I might end up losing my other leg. I did not care about living. If my mom and brothers hadn't taken care of me, I would not be alive today.

The affidavits do not allege facts which would raise a fact question about plaintiff's mental incapacity as that term is used in the statute. Plaintiff's original affidavit made the conclusory allegation that he could not function for two years following the amputation, both mentally and physically, because of the stress from the trauma. But the only facts he asserts to support that conclusion are that he rarely left his room and could not concentrate. He avers that he could not consider his legal rights because the ordeal reminded him of the trauma. This affidavit is insufficient to create a disputed question of fact on the question of mental capacity because it contains no facts showing that he was deprived of his reasoning faculties or that he was incapable of understanding and acting with discretion in the ordinary affairs of his life. Rarely leaving one's room and an inability to concentrate do not constitute "mental incapacity" which will toll the statute of limitations.

6. We call to plaintiff's attention that Rule 81.12(a) requires the record to be in chronological order and that the respective dates of pleading or entry into the record of documents in the legal file be shown. Eastern District Rule 330 further requires that the circuit court minute sheet be included in the legal file.

■ Dr. Berger's affidavit is insufficient in two respects. First, his opinion is a bare conclusion which is not supported by any facts and is thus insufficient to rebut a motion for summary judgment. *Weaver v. State Farm Mut. Auto. Ins. Co.*, 936 S.W.2d 818, 822 (Mo. banc 1997). "An affidavit which fails to aver specific facts and relies only upon mere doubt and speculation fails to raise any issue of material fact. Conclusory allegations are not sufficient to raise a question of fact in summary judgment proceedings." *Id.* Second, his conclusion goes to the question of whether plaintiff could exercise certain undefined "rights" or was capable of "seeking help". It does not address plaintiff's ability to reason or to manage his affairs.

■ Plaintiff's supplemental affidavit likewise does not create a factual issue. The fact that plaintiff relied on others for his physical care does not, standing alone, show that he was mentally incapacitated where his physical condition required such assistance. His averments about his mental state are conclusions which are unsupported by facts and are contradicted by facts contained in his affidavit and in his deposition. Although he concludes that he was incapable of handling the basic needs of daily life or of understanding the ordinary affairs of life and that he was mentally incapable of making simple decisions as when to get out of bed or choosing what and when to eat, he also avers that he watched television, bathed, and fixed meals. In his deposition he testified that he made out a grocery list which he gave to his mother along with his own food stamps so she could do his grocery shopping and he prepared his own meals and fed himself in his room. "A party may not avoid summary judgment by giving inconsistent testimony and then offering the inconsistencies into the record in order to demonstrate a genuine issue of material fact." *ITT*, 854 S.W.2d at 388.

■ The two most common means used to demonstrate mental incapacity are a medical diagnosis of a condition which would make a person "mentally incapacitated" as that term is used in Section 516.170 or evidence that the probate court had issued letters of guardianship for a person during the period of incapacity. *See Henry v. Henry*, 886 S.W.2d 172, 174–75 (Mo.App.1994); *Albert v. Sauer*, 869 S.W.2d 853, 855 (Mo.App. 1994) (both of which applied Section 452.340.4); *see also, Vance v. Stevens*, 930 F.2d 661, 662 (8 th Cir.1991) (construing Section 516.170).

In this case plaintiff did not file letters of guardianship, he did not provide an affidavit of a physician attesting to a mental disability, his psychologist's affidavit was conclusory and did not address the salient issues of mental disability, and his own conclusory and contradictory averments were insufficient to create an issue of fact. Because plaintiff did not raise a genuine issue of material fact that he was "mentally incapacitated" so as to toll the statute of limitations, defendant was entitled to summary judgment as a matter of law. Points one and two are denied.

## II. *Due Process and Equal Protection Claims*

■ For his final point plaintiff contends the trial court deprived him of due process and equal protection of the laws when it required him to prove his mental incapacity, without giving him prior notice of what would be required to prove that he was "mentally incapacitated" and by misinterpreting the facts in the light most favorable to defendant. This point was not preserved because this alleged constitutional error was not raised in the trial court. Further, it is frivolous. Point three is denied.

The judgment of the trial court is affirmed.

PAUL J. SIMON, P.J. and LAWRENCE E. MOONEY, J., concur.