

# In the Missouri Court of Appeals
# Eastern District

### DIVISION III

| | | |
|---|---|---|
| SHAUN STANBROUGH, | ) | No. ED100567 |
| | ) | |
| Appellant, | ) | Appeal from the Circuit Court |
| | ) | of St. Louis County |
| vs. | ) | |
| | ) | Honorable Michael T. Jamison |
| VITEK SOLUTIONS, INC., | ) | |
| | ) | |
| Respondent. | ) | FILED:  July 8, 2014 |

## Introduction

Appellant Shaun Stanbrough ("Stanbrough") appeals from the entry of summary judgment in favor of Vitek Solutions, Inc. ("Vitek").  Stanbrough alleged in a two-count petition that Vitek violated the Missouri Minimum Wage Law ("MMWL") by failing to pay overtime compensation he was due and that Vitek breached its contract with him and violated Section 290.100[1] by unilaterally decreasing his pay without notice.  Vitek filed a motion for summary judgment claiming that Stanbrough was estopped from bringing a claim for unpaid overtime because Stanbrough submitted daily timesheets that he certified as true and accurate and Vitek relied on the accuracy of those timesheets.  Vitek also argued it was undisputed that its pay schedule changed only once during Stanbrough's employment and that Stanbrough received

---

[1] All statutory references are to RSMo. 2000.

notice of the change, which increased his pay. The trial court granted summary judgment on both counts for Vitek.

On appeal, Stanbrough claims that the trial court erred in granting summary judgment for Vitek because a genuine dispute exists as to the facts necessary to support Vitek's affirmative defense of estoppel. Stanbrough also claims the trial court erred in entering summary judgment in favor of Vitek on his claim for breach of contract and violation of Section 290.100 because he provided evidence to establish a genuine issue of fact as to whether Vitek unilaterally decreased his pay without 30 days' notice. Because the summary judgment evidence in the record establishes the existence of a genuine issue of material fact as to both of Stanbrough's claims, we reverse the judgment of the trial court and remand this matter for trial.

<u>Factual and Procedural History</u>

Viewed in the light most favorable to the non-moving party, the record contains the following uncontroverted facts. Stanbrough worked as a technician for Vitek from January 1, 2009, until November 10, 2010. As a technician for Vitek, Stanbrough repaired or installed cable television, internet services, and telephone services for Charter Communications, Inc. ("Charter") customers in the St. Louis area. Because of the nature of Stanbrough's job, he often worked outside of Vitek's corporate offices in the homes of Charter customers. Stanbrough's route, the number of customers he serviced, the type of installation or repairs he performed, and the complexity of any particular job he completed varied from day to day.

Stanbrough was required to submit timesheets and self-report the hours he worked each day. During the course of his employment with Vitek, Stanbrough submitted 424 daily, self-reported timesheets, signing all but six of them. Beneath the signature line was a sentence stating, "I represent the above information is true and accurate." Vitek paid Stanbrough for all of

2

the hours that Stanbrough recorded and submitted on his daily timesheets, including overtime for hours he reported working in excess of 40 hours per week. Stanbrough reported on his timesheets that he worked in excess of 40 hours per week for 16 of the 94 weeks he worked for Vitek. Stanbrough reported working less than 30 hours per week for 37 weeks, less than 40 hours per week for 40 weeks, and exactly 40 hours for one week.

Vitek paid Stanbrough on a "piece-rate" basis in accordance with two published schedules, dated January 1, 2009 ("2009 schedule"), and January 3, 2010 ("2010 schedule"). The piece-rate schedules prescribed the amount a technician was to be paid for performing specific installation or repair tasks. On a weekly basis, a technician's total piece-rate earnings were added up and divided by the total number of hours worked in order to determine the technician's hourly rate for that week. If the technician worked overtime, the employee was entitled to his or her hourly rate of pay for all hours worked plus an additional 50 percent of that hourly rate for any hours worked in excess of 40 hours per week. Prior to the 2010 schedule taking effect, Vitek provided Stanbrough with a copy of the updated piece rates. On December 4, 2009, Stanbrough signed and dated a written acknowledgment of his receipt and understanding of the updated schedule. The 2010 schedule provided for either the same or higher piece rates when compared with the 2009 schedule.

On December 22, 2011, Stanbrough filed a First Amended Petition for Damages against Vitek and two of its executives: Steve Tihen ("Tihen") and Kevin Schaefer ("Schaefer") (collectively, "Defendants").[2] In his petition, Stanbrough first alleged that Defendants violated the MMWL by failing to pay him overtime compensation he had earned. Stanbrough claimed that Defendants routinely deducted 30 minutes to an hour from his daily timesheet for a work

---

[2] The petition also named Suzanne Schaefer as a defendant, but Stanbrough later consented to her dismissal from the lawsuit with prejudice.

break, even if he did not take a break. Stanbrough additionally alleged that after finishing his last scheduled service call, he was required to stay near his vehicle on his assigned route until 5 p.m. However, Defendants routinely did not count this "remain on route" time in determining the number of hours Stanbrough worked for the purposes of paying overtime. Stanbrough claimed that by undercounting the hours he worked, Defendants knowingly and intentionally failed to pay him overtime in violation of the MMWL. Stanbrough also brought a claim for breach of contract, alleging that Vitek unilaterally and without notice decreased his piece-rate pay in violation of Section 290.100.

In its answer to Plaintiff's First Amended Petition, filed January 30, 2012, Vitek raised the affirmative defense of estoppel with regard to Stanbrough's claim for unpaid overtime. On January 25, 2013, Defendants filed a motion for summary judgment also based on the theory of estoppel. In their motion, Defendants claimed that Stanbrough submitted 424 daily timesheets that documented all of the hours Stanbrough attested he had worked each day. Stanbrough signed all but six of the timesheets directly above a sentence that read "I represent the above information is true and accurate." The Defendants averred it was undisputed that they relied upon Stanbrough's daily timesheets in order to calculate his pay, Stanbrough was paid for all of the hours he submitted, and they neither knew nor had reason to know that the hours Stanbrough recorded on his daily timesheets were inaccurate or false. Accordingly, Defendants argued that these undisputed facts estopped Stanbrough from seeking recovery for any overtime hours that he did not record on his timesheets. As to Stanbrough's claim that Defendants decreased his piece-rate pay without notice, Defendants noted the facts were uncontroverted that during Stanbrough's employment, the piece rates changed only once, Stanbrough received 30 days' notice of the change, and the piece-rate compensation either stayed the same or increased.

4

Stanbrough filed suggestions in opposition to Defendants' motion for summary judgment, which included Stanbrough's sworn affidavit. In his affidavit, Stanbrough stated that J.R. Payne, a Vitek executive, told Stanbrough's supervisors, Tom Mahaney, Jeremy Huff, and Matt Hammond, not to allow Stanbrough to include time spent performing administrative work at the Vitek office on his timesheets. Stanbrough also stated in his affidavit that Mahaney, Huff, and Hammond instructed him to inaccurately record three specific segments of daily compensable time. First, Stanbrough stated that he was instructed to deduct time for a meal break from his daily time sheet, regardless of whether he took a meal break or not. On days that his timesheet indicated at least eight hours of work, he was told to record his meal break as one hour. On days that Stanbrough worked between four hours and eight hours, the meal break was to be recorded as 30 minutes. If Stanbrough worked less than four hours, no break was required to be recorded. Stanbrough stated in his affidavit that Huff and Mahaney also told him that Stanbrough's drive time between jobs should be considered his meal break, even if he ate while he was driving and did not actually take a meal break. On two or three occasions when Stanbrough turned in a completed time sheet that did not include a meal break, Stanbrough stated in his affidavit that Huff returned the timesheet to Stanbrough and demanded that he deduct time for an unpaid meal break. Because Huff was his supervisor, Stanbrough complied with his demands. Second, Stanbrough stated in his affidavit that he was instructed not to include on his timesheets any of the required "remain on route" time spent waiting for additional work orders between the completion of his last job and 5 p.m. Third, Stanbrough stated in his affidavit that his supervisors instructed him not to record any time worked prior to arriving at his first assigned job in the field, despite the fact that he was required to report to the Vitek office by 7:30 a.m. to pick up his equipment for the day. Stanbrough also averred in his affidavit that he questioned

5

Huff several times as to why he was not receiving the full piece rates due to him. Stanbrough claimed that Huff told him his pay was based on what Charter paid Vitek.

In his suggestions in opposition to summary judgment, Stanbrough acknowledged that he provided no evidence that either Tihen or Schaefer controlled Stanbrough's supervisors or directed them to instruct Stanbrough to underreport his hours. Stanbrough conceded that summary judgment in favor of Tihen and Schaefer was appropriate; accordingly, the trial court granted summary judgment in favor of Tihen and Schaefer. Upon review of the record and applicable law, the trial court also granted summary judgment in favor of Vitek on both claims in Stanbrough's petition. This appeal follows.[3]

## Points on Appeal

Stanbrough presents two points on appeal. In his first point on appeal, Stanbrough argues that the trial court erred in entering summary judgment in favor of Vitek on his MMWL claim. Specifically, Stanbrough argues that even though he did not record overtime hours on his timesheets, he is not estopped from claiming unpaid overtime wages because Vitek's actions squelched his truthful reports of overtime. In his second point on appeal, Stanbrough claims the trial court erred in entering summary judgment in favor of Vitek on his claim for breach of contract and violation of Section 290.100 because he provided evidence to establish a genuine issue of fact as to whether Vitek unilaterally decreased his pay without 30 days' notice.

---

[3] Initially, we address the merits of Vitek's motion to dismiss or, in the alternative, to strike Stanbrough's brief for failure to comply with Rule 84.04(c). Vitek claims that Stanbrough failed to present a "fair and concise statement of the facts relevant to the questions presented for determination without argument." Rule 84.04(c). While it is true that failure to comply with Rule 84.04 may constitute grounds to dismiss an appeal, our review is discretionary. Because we are able to discern the relevant facts from the record, Vitek's motion to dismiss or, in the alternative, to strike Stanbrough's brief is denied.

<u>Standard of Review</u>

This Court reviews the grant of summary judgment *de novo* and gives no deference to the trial court's findings or determinations. <u>ITT Commercial Fin. Corp. v. Mid-Am. Marine Supply Corp.</u>, 854 S.W.2d 371, 376 (Mo. banc 1993). We review the record in the light most favorable to the party against whom judgment was entered and give the non-movant the benefit of all reasonable inferences from the record. <u>Id.</u>; <u>Calvert v. Plenge</u>, 351 S.W.3d 851, 854-55 (Mo. App. E.D. 2011). We will affirm where the pleadings, depositions, affidavits, answers to interrogatories, exhibits, and admissions establish that no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. <u>Calvert</u>, 351 S.W.3d at 855.

<u>Discussion</u>

**I.      Stanbrough's Claim for Unpaid Overtime**

Stanbrough's first point on appeal addresses Vitek's argument that Stanbrough is estopped from raising his claim for unpaid overtime because he seeks payment for hours not reported on his timesheets. Stanbrough claims that estoppel does not bar his claim, and consequently cannot support the trial court's grant of summary judgment because his supervisors at Vitek encouraged him to file inaccurate timesheets. In order to address this issue, we first examine the rules supporting a proper grant of summary judgment.

A.      <u>Summary Judgment</u>

Under Rule 74.04(c), a defending party may establish a right to summary judgment by demonstrating: (1) facts negating any one of the elements of the non-movant's claim; (2) "that the non-movant, after an adequate period for discovery, has not been able and will not be able to produce sufficient evidence to allow the trier of fact to find the existence of any one" of the elements of the non-movant's claim; or (3) "that there is no genuine dispute as to the existence of

7

the facts necessary to support movant's properly pleaded affirmative defense." Goerlitz v. City of Maryville, 333 S.W.3d 450, 453 (Mo. banc 2011) (quoting ITT Commercial Fin. Corp., 854 S.W.2d at 381). "Each of these three methods individually establishes the right to judgment as a matter of law." Id. (citation omitted).

In this case, Vitek claims the summary judgment evidence before us supports its affirmative defense of estoppel. Therefore, we must determine whether the record contains any genuine issues of fact which, if proven, could defeat Vitek's affirmative defense. For purposes of summary judgment, a "genuine issue" exists where the record reasonably supports two plausible, but contradictory, accounts of the essential facts. Id. at 382; Phillips v. CNS Corp., 135 S.W.3d 435, 440 (Mo. App. W.D. 2004). "The rule that the non-movant is 'given the benefit of all reasonable inferences' means that if the movant requires an inference to establish his right to judgment as a matter of law, and the evidence reasonably supports any inference other than (or in addition to) the movant's inference, a genuine dispute exists . . . ." ITT Commercial Fin. Corp., 854 S.W.2d at 382.

When a genuine issue of material fact exists, summary judgment should be denied. Phillips, 135 S.W.3d at 440. "It is not the truth of these facts which matter, but whether the facts are disputed." Id. (quoting Rogers v. Frank C. Mitchell Co., 908 S.W.2d 387, 389 (Mo. App. E.D. 1995)); see also ITT Commercial Fin. Corp., 854 S.W.2d at 382 (the trial court must look simply for the existence, not the extent, of genuine disputes). "Therefore, where the trial court, in order to grant summary judgment, must overlook material in the record that raises a genuine dispute as to the facts underlying the movant's right to judgment, summary judgment is not proper." ITT Commercial Fin. Corp., 854 S.W.2d at 378. "Questions of fact should be presented to the jury." Phillips, 135 S.W.3d at 440 (citation omitted).

B.      The FLSA and Estoppel

Under Missouri law, no employee shall be employed for a workweek longer than 40 hours unless such employee receives compensation for his or her employment in excess of 40 hours at a rate not less than one and one-half times his or her regular rate. Section 290.505.1. Missouri law regulating overtime compensation is to be interpreted in accordance with the Fair Labor Standards Act ("FLSA"), 29 U.S.C. Section 201, *et seq*. Section 290.505.4.

To establish a claim under the FLSA for unpaid overtime, an employee must prove that he performed work for which he was not compensated and that the employer had knowledge of that work. Anderson v. Mt. Clemens Pottery Co., 328 U.S. 680, 686-87 (1946), superseded by statute on other grounds as stated in IBP, Inc. v. Alvarez, 546 U.S. 21, 41 (2005). Knowledge may be actual or constructive; thus, an employer is liable for employees' unpaid overtime work if the employer knew or should have known they were working overtime. Hertz v. Woodbury County, Iowa, 566 F.3d 775, 781 (8th Cir. 2009). An employer who knows that an employee is working overtime "cannot stand idly by and allow an employee to perform overtime work without proper compensation." Forrester v. Roth's I.G.A. Foodliner, Inc., 646 F.2d 413, 414 (9th Cir. 1981).

Although the employer may be held liable for unreported work hours, it is well established in FLSA cases that an employee is estopped from making a claim for unpaid overtime when the plaintiff is at fault for failing to record his hours worked, the employer is otherwise not at fault for such failure by the plaintiff, and the employer otherwise lacks knowledge of such work performed by the plaintiff. Id. at 414-15; see also Brumbelow v. Quality Mills, Inc., 462 F.2d 1324, 1327 (5th Cir. 1972) (employee was estopped from claiming unpaid overtime where employee was at fault for not recording overtime hours and admitted that

9

no supervisor instructed her to falsify her timesheets); Haviland v. Catholic Health Initiatives-Iowa Corp., 729 F.Supp.2d 1038, 1076 (S.D. Iowa 2010) (employees were estopped from raising overtime claims when they failed to use employer's system for reporting unpaid time, thereby preventing the employer from acquiring knowledge of uncompensated overtime hours).

However, it is equally recognized in FLSA cases that an employer will not be permitted to disclaim knowledge of unreported overtime hours worked when the employer's actions squelch truthful reports of hours worked, or where the employer encourages artificially low reporting. Allen v. Bd. of Pub. Educ. For Bibb County, 495 F.3d 1306, 1319 (11th Cir. 2007); see also McConnell v. Thomson Newspapers, Inc., 802 F.Supp. 1484, 1506-07 (E.D. Tex. 1992) (employee was not estopped from raising FLSA claim for unpaid overtime when he testified that management told him not to keep records of overtime hours worked). "[O]nce an employer knows or has reason to know that an employee is working overtime, it cannot deny compensation simply because the employee failed to properly record or claim his overtime hours." Kuebel v. Black & Decker Inc., 643 F.3d 352, 363 (2d Cir. 2011). "[W]here the employee's falsifications were carried out at the instruction of the employer or the employer's agents, the employer cannot be exonerated by the fact that the employee physically entered the erroneous hours into the timesheets." Id.

In this case, Vitek sought summary judgment on the basis of its affirmative defense of estoppel. Vitek argued that Stanbrough was estopped from seeking overtime pay for hours he allegedly worked but failed to record on his daily timesheets. Vitek also claimed it had no knowledge of any overtime work performed by Stanbrough for which he was not compensated.[4]

---

[4] The only evidence in the record to support Vitek's claim that it had no knowledge of Stanbrough's uncompensated overtime hours is the affidavits of Kevin Schaefer and Steve Tihen, Vitek executives, who both state that neither they nor Vitek knew or had reason to know that the hours of work recorded by Stanbrough on his daily timesheets were inaccurate or untruthful.

10

Therefore, because Stanbrough was paid for all of the overtime hours that he recorded, and because Vitek allegedly neither knew nor had reason to know that the hours Stanbrough recorded were inaccurate, Vitek argued Stanbrough was estopped from pursuing his claim for overtime. The trial court granted Vitek's motion for summary judgment without explanation.[5]

To be entitled to summary judgment on its affirmative defense of estoppel, Vitek must show that there is no genuine dispute as to the existence of facts necessary to support the affirmative defense. See Goerlitz, 333 S.W.3d at 453 (when a defendant moves for summary judgment based on an affirmative defense, it must show there is no genuine dispute as to the existence of each of the facts necessary to support the properly pleaded affirmative defense).

Stanbrough insists Vitek cannot meet this burden because there is a genuine issue of material fact as to Vitek's knowledge of the inaccuracy of Stanbrough's timesheets. In response to Vitek's motion for summary judgment, Stanbrough filed an affidavit alleging that his supervisors specifically told him not to accurately report his time. Because Stanbrough's supervisors are agents of Vitek, their knowledge regarding matters within their scope of employment and authority is imputed to Vitek. See Iota Mgmt. Corp. v. Boulevard Inv. Co., 731 S.W.2d 399, 410 (Mo. App. E.D. 1987) ("The knowledge of an agent of a corporation regarding matters within the agent's scope of employment and authority and to which his employment or authority extends is imputed to the corporate principal.").

We are required to give Stanbrough the benefit of all reasonable inferences. In doing so, we find Stanbrough's affidavit reasonably supports an inference that Vitek knew Stanbrough was working hours for which he was not paid. Because Vitek disputes this inference, a genuine issue of material fact exists that must preclude summary judgment. See ITT, 854 S.W.2d at 382 (a

---

[5] Where the trial court does not state its reasoning for granting summary judgment, we presume the court based its decision on the grounds asserted in the movant's motion. Reed v. McDonald's Corp., 363 S.W.3d 134, 138 (Mo. App. E.D. 2012).

11

"genuine issue" exists where the record reasonably supports two plausible, but contradictory, accounts of the essential facts); Phillips, 135 S.W.3d at 440 (when facts are disputed, regardless of the truth of the facts, the movant's motion for summary judgment should be overruled).

Vitek, however, argues that we may not consider Stanbrough's affidavit as summary judgment evidence. Vitek asserts that the affidavit is legally insufficient to create a genuine dispute as to whether Stanbrough worked any overtime hours beyond those he self-reported or whether Vitek squelched his truthful reports of overtime. As support for this proposition, Vitek maintains that Stanbrough's affidavit is too generalized, speculative, and self-serving; contains hearsay and lacks foundation; and is a disingenuous attempt to create a sham issue of fact. We examine each of Vitek's arguments in turn.

1. *Generalized, Speculative Affidavit*

Vitek contends that Stanbrough's affidavit contains generalized, speculative, and self-serving statements regarding the days and hours he worked in a typical workweek. Vitek posits that Stanbrough's generalized, speculative statements are legally insufficient to support a reasonable inference that he worked any more hours than he recorded on his timesheets. We disagree.

In order to overcome a motion for summary judgment, a party must "by affidavits or otherwise, set forth specific facts showing a genuine issue for trial." St. Charles County v. Dardenne Realty Co., 771 S.W.2d 828, 830 (Mo. banc 1989). Affidavits in opposition to motions for summary judgment must be made on personal knowledge, set forth facts as would be admissible in evidence, and show that the affiant is competent to testify. Syngenta Crop Prot., Inc. v. Outdoor Equip. Co., 241 S.W.3d 425, 428 (Mo. App. E.D. 2007). Generally, an affiant who fails to assert specific facts and relies only upon mere doubt and speculation fails to raise

12

any issue of material fact. Id. (citing Kellog v. Kellog, 989 S.W.2d 681, 687 (Mo. App. E.D.1999)). "Conclusory allegations are not sufficient to raise a question of fact in summary judgment proceedings." Id.

Here, Vitek's argument fails because Stanbrough's affidavit contains specific allegations, based on Stanbrough's personal knowledge, that create a genuine dispute as to Vitek's knowledge of overtime hours worked. The affidavit alleges that three named supervisors instructed him to deduct time for a meal break even if he did not actually take a break; to not record any "remain on route" time; and to not record any time between 7:30 a.m. and his first assigned job in the field. Stanbrough's attestations are not conclusory or speculative, but rather contain specific facts from which a reasonable juror could conclude that Stanbrough performed work for which he was not compensated.

We acknowledge that the number of hours Stanbrough alleges in his affidavit that he worked but was not paid is inexact. However, given the nature of Stanbrough's claims, we do not hold him to the level of specificity as suggested by Vitek. Instead, Stanbrough is permitted by law to present evidence of the number of hours he worked as a matter of just and reasonable inference.

An employee who makes a claim for unpaid wages under the FLSA bears the burden of proving that he performed work for which he was not properly compensated. Anderson, 328 U.S. at 686-87. It is the duty of the employer to keep proper records of employee wages and hours. Id. at 687. The employer's duty to maintain accurate records of its employees' hours is non-delegable, even where the employee is required to submit his own timesheets. Kuebel, 643 F.3d at 363. If the employer has kept accurate records of the employee's hours, the employee can easily meet his burden by securing production of those records. Anderson, 328 U.S. at 687.

13

However, if the employer's records are inaccurate and prevent the employee from proving the precise extent of uncompensated work, the solution is not to penalize the employee, as such a result would run contrary to the "remedial nature" of the FLSA. Id.; Kuebel, 643 F.3d at 363. "To place the burden on the employee of proving damages with specificity would defeat the purpose of the FLSA where the employer's own actions in keeping inadequate or inaccurate records had made the best evidence of such damages unavailable." Brown v. Family Dollar Stores of IN, LP, 534 F.3d 593, 595 (7th Cir. 2008).

It is well established that where the employer's records are unreliable or inaccurate, a relaxed evidentiary standard as to the measure of the employee's damages applies. In this situation, "an employee has carried out his burden if he proves that he has in fact performed work for which he was improperly compensated and if he produces sufficient evidence to show the amount and extent of that work *as a matter of just and reasonable inference*." Anderson, 328 U.S. at 687 (emphasis added). An employee may meet this burden by relying on recollection alone. Kuebel, 643 F.3d at 362; see also Garner v. Chevron Phillips Chem. Co., L.P., 834 F. Supp. 2d 528, 547 (S.D. Tex. 2011) (evidence can include plaintiff's attestations in his or her affidavit as to when and how many overtime hours were worked); England v. Advance Stores Co. Inc., 263 F.R.D. 423, 450 (W.D. Ky. 2009) (evidence as to the uncompensated work the employee performed can consist solely of the plaintiff's own testimony). "It is . . . a fundamental precept of the FLSA that an employee should not be denied [recovery] because proof of the number of hours worked is inexact or not perfectly accurate." Monroe v. FTS USA, LLC, 763 F.Supp.2d 979, 989 (W.D. Tenn. 2011)).

After the employee produces evidence that shows he has in fact performed work for which he was improperly compensated, as well as the amount and extent of that work as a matter

14

of just and reasonable inference, the burden then shifts to the employer to produce evidence of the precise amount of work performed or to negate the reasonableness of the inference to be drawn from the employee's evidence. Anderson, 328 U.S. at 687-88. If the employer fails to meet that burden, a court may award damages even though they are approximate. Id. at 688.

Critical to our analysis is the application of Anderson's relaxed evidentiary standard in situations where the employee is responsible for filling out his own timesheets. When an employee inaccurately records his or her hours of work at the instruction of the employer or the employer's agents, "the employer cannot be exonerated by the fact that the employee physically entered the erroneous hours into the timesheets." Kuebel, 643 F.3d at 363. Any other conclusion would obviate the public policy behind the FLSA and would "permit an employer to obligate its employees to record their own time, have its managers unofficially pressure them not to record overtime, and then, when an employee sues for unpaid overtime, assert that his claim fails because his timesheets do not show any overtime." Kuebel, 643 F.3d at 364.

Here, Stanbrough's affidavit asserts that his supervisors at Vitek prevented him from recording all of the hours that he worked. The affidavit states that Stanbrough's timesheets are inaccurate despite the fact that he personally recorded his time. Given the nature of the assertions set forth in the affidavit, we are guided by Anderson. Applying the relaxed evidentiary standard described in Anderson, Stanbrough need only show that he performed work for which he was improperly compensated and produce evidence to show the amount and extent of that work as a matter of just and reasonable inference. See Allen, 495 F.3d at 1317-18 (holding the just and reasonable inference standard applied where plaintiffs had not recorded overtime but testified that they were discouraged from accurately recording overtime work).

15

Under Anderson's relaxed evidentiary standard, Stanbrough has presented sufficient evidence to show that he performed work for which he was improperly compensated and has shown the amount of his uncompensated work "as a matter of just and reasonable inference." In his affidavit, Stanbrough specifically attests that he was required to be at Vitek offices by 7:30 a.m. but was not allowed to begin recording his time until he arrived at his first job site. He also attests that he was required to deduct one half hour to one full hour for lunch breaks, when, in reality, he worked through those breaks. Finally, Stanbrough attests that he was not allowed to record any "remain on route" time – the time between his last job of the day and 5 p.m. when he was required to stay near his route and wait for any additional work orders. Although we recognize the challenge Stanbrough may have in quantifying the amount of work for which he alleges he was not compensated, we find that Stanbrough has presented sufficient evidence under Anderson to defeat Vitek's claim that the affidavit is too generalized or speculative to create a genuine issue of fact. Thus, the burden now shifts to Vitek to come forward with evidence to negate the reasonableness of the inference created by Stanbrough's affidavit as to the amount of his uncompensated overtime work. Any dispute as to the precise amount of damages is a fact issue for trial.

2. *Hearsay*

Vitek next argues that Stanbrough's affidavit is insufficient to create a genuine issue of material fact because it contains hearsay as to what certain supervisors allegedly said. Vitek specifically directs this Court to paragraph 9 of Stanbrough's affidavit, in which he states:

> I was instructed by three different supervisors, Tom Mahaney, Jeremy Huff and Matt Hammond, not to include the time I spent performing administrative work at the St. Peters office on my daily time sheets. Each of them stated that they were instructed by J.R. Payne, a Vitek executive, not to allow me to include such time on my time sheets. I complained on several occasions to each of those three supervisors, Mahaney, Huff and Hammond, that the hours I spend working in

16

Vitek's office should be included on my time sheets. All three of those supervisors, on each of those occasions, told me that I could not include those hours on my daily time sheets.

Vitek also points to Stanbrough's allegations that Mahaney, Huff, and Hammond instructed him to deduct time for a meal break even if he did not take one, to consider his "drive time" between jobs as his "meal break," to exclude any "remain on route" time from his timesheets, and to exclude time worked between picking up his daily assignments and his first assigned job in the field. Stanbrough also claimed that when he asked Huff why he received less than the full piece-rate compensation he was due, Huff told him he was paid based on what Charter paid Vitek.

Vitek is incorrect in its assertion that these allegations consist of inadmissible hearsay. Rather, these alleged statements by Vitek employees constitute admissible statements by a party-opponent. A statement or admission by a party-opponent may be admitted as evidence if the statement is material to the issues of the case, the statement is relevant to the case, and the statement is offered by the opposing party. State v. Floyd, 347 S.W.3d 115, 124 (Mo. App. E.D. 2011). The statement must be inconsistent with the party's current position. Spearman v. Hoskins, 806 S.W.2d 440, 441 (Mo. App. E.D. 1991). Furthermore, an admission of an employee may be received into evidence against the employer if the statement is relevant to the issues involved and the employee, in making the admission, was acting within the scope of his authority. Bynote v. National Super Markets, Inc., 891 S.W.2d 117, 124 (Mo. banc 1995)). The admission of a party opponent is not hearsay. Floyd, 347 S.W.3d at 124.

The alleged statements by Vitek employees are material to the issues of the case, relevant to the case, and inconsistent with Vitek's current position that Stanbrough accurately recorded all of the time that he worked and was paid according to the appropriate piece-rate schedule.

17

Furthermore, Vitek does not dispute that Payne or the three named supervisors were acting within the scope of their authority when they allegedly made these statements. Therefore, these statements are admissible as admissions by a party-opponent and do not render Stanbrough's affidavit legally insufficient to raise an issue of fact.[6]

    3. *Sham Issues of Fact*

Vitek's final argument with regard to Stanbrough's affidavit addresses the inconsistencies between Stanbrough's timesheets and the attestations made by Stanbrough in his summary judgment affidavit. Vitek argues that Stanbrough's affidavit is a disingenuous attempt to create an issue of fact that otherwise does not exist, and therefore, cannot be considered as summary judgment evidence due to Stanbrough's prior attestations of the truthfulness of his timesheets. Vitek points to the fact that Stanbrough signed 418 of his 424 timesheets above a line stating "I represent the above information is true and accurate."

We acknowledge the general principle that "a party may not avoid summary judgment by giving inconsistent testimony and then offering the inconsistencies into the record in order to demonstrate a genuine issue of material fact." ITT Commercial Fin. Corp., 854 S.W.2d at 388. The utility of summary judgment "as a procedure for screening out sham issues of fact" would be diminished if a party "who has been examined at length on deposition could raise an issue of fact simply by submitting an affidavit contradicting his own earlier testimony." Camfield Tires, Inc. v. Michelin Tire Corp., 719 F.2d 1361, 1365 (8th Cir. 1983).

---

[6] Vitek also argues that Stanbrough's affidavit lacks foundation for the statements made therein. Vitek directs this Court to Stanbrough's allegation that he asked Huff why he was not being paid in accordance with the piece-rate code, and Huff told him he was being paid based on what Charter had paid Vitek. Vitek asserts that the statement lacks foundation as to what knowledge Huff had as to the matter. However, the question is not whether Huff had knowledge of the situation, but whether Stanbrough had personal knowledge of his encounter with Huff. Stanbrough clearly stated in his affidavit that Huff told him he was being paid according to what Charter paid Vitek. Because Stanbrough's allegation was based on personal knowledge, his affidavit is legally sufficient to raise an issue of material fact. See Syngenta Crop Prot., Inc., 241 S.W.3d at 428.

18

Missouri cases have applied this principle to exclude an affidavit offered in a summary judgment proceeding when the affidavit contradicts the affiant's previous *sworn deposition testimony*. See ITT Commercial Fin. Corp., 854 S.W.2d at 388 ("[A] party may not avoid summary judgment by giving inconsistent testimony and then offering the inconsistencies into the record in order to demonstrate a genuine issue of material fact.").

Vitek asks this Court to extend this principle to Stanbrough's "certified" timesheets. We decline to do so. Although Stanbrough signed the timesheets in question and attested to the accuracy of the information therein, Stanbrough was not under oath when he signed his timesheets and was not subject to cross-examination. See Shockley v. City of Newport News, 997 F.2d 18, 23 (4th Cir. 1993) (in FLSA claim for overtime, supervisor's affidavit did not create sham issues of fact when it contradicted letter he previously wrote; letter was not the equivalent of deposition testimony because supervisor was not under oath nor was he subject to cross-examination at the time it was written). We have found no cases in Missouri or elsewhere extending this principle to an affiant's prior unsworn statements. To the extent Stanbrough's affidavit conflicts with his previously signed and altered timesheets, those inconsistencies may be tested through cross-examination at trial and considered by the jury in determining the credibility of Stanbrough's testimony in support of his claims. See Kuebel, 643 F.3d at 364; Allen, 495 F.3d at 1317.

Having reviewed Stanbrough's affidavit, we find the affidavit is legally sufficient to create a genuine issue of material fact as to the issue of estoppel. The attestations contained within Stanbrough's affidavit establish a genuine issue of fact as to whether Vitek knew or should have known that Stanbrough's timesheets underreported his hours. The affidavit states that Stanbrough's supervisors instructed him not to include all hours worked on his timesheets.

19

Taking these statements as true, and giving Stanbrough the benefit of all reasonable inferences, the affidavit contains sufficient facts to dispute Vitek's claim that it neither knew nor had reason to know of overtime hours worked by Stanbrough. Because the record contains a genuine dispute as to facts necessary to support Vitek's affirmative defense of estoppel, the trial court's grant of summary judgment as to Stanbrough's claim for unpaid overtime must be reversed. Point One is granted.

## II.     Stanbrough's Claim for Breach of Contract and Violation of Section 290.100

In his second point on appeal, Stanbrough asserts that the trial court erred in entering summary judgment for Vitek on the second claim of his amended petition. Though framed as a single issue, Stanbrough's second claim sets forth two bases of recovery by Stanbrough against Vitek. Stanbrough alleges that Vitek failed to pay him in accordance with the agreed upon piece-rate schedule, resulting in a breach of contract and a violation of Section 290.100.[7]

In his affidavit, Stanbrough claimed that he was paid less than required by the piece-rate schedule. When he inquired into the matter, a Vitek supervisor told Stanbrough that he was being paid based on what Charter had paid Vitek. In its motion for summary judgment, Vitek did not aver that it always paid Stanbrough in accordance with the piece-rate schedule. Rather, Vitek claimed it was undisputed that during Stanbrough's employment, Vitek changed the piece-rate schedule only once, and on that occasion Stanbrough signed and dated a written acknowledgement of the changes. Furthermore, the new piece-rate schedule did not reduce Stanbrough's wages, but rather increased his pay. Therefore, Vitek claimed, it was entitled to summary judgment on Stanbrough's claims for breach of contract and violation of Section 290.100.

_____

[7] Section 290.100 requires Missouri employers to give employees 30 days of notice before decreasing wages.

20

Vitek's argument circumvents Stanbrough's actual claim. Stanbrough does not dispute that he signed and acknowledged the new piece-rate schedule, nor does he claim that the schedule was officially changed to his disadvantage without the appropriate notice. Rather, Stanbrough asserts that Vitek paid him less than he was supposed to receive under the agreed-upon schedule. Stanbrough claims that when he asked his supervisor why he was being paid less than the piece-rate schedule required, his supervisor told him he was being paid according to what Charter paid Vitek.

Because we afford the non-movant the benefit of all reasonable inferences, we find that Stanbrough's affidavit creates a genuine issue of material fact as to whether he was paid less than required by the piece-rate schedule. See ITT, 854 S.W.2d at 382. When a genuine issue of material fact exists, the movant's motion for summary judgment should be overruled. Phillips, 135 S.W.3d at 440 ("It is not the truth of these facts which matter, but whether the facts are disputed."). Accordingly, the trial court erred in entering summary judgment for Vitek on Stanbrough's claims for breach of contract and violation of Section 290.100.

Point Two is granted.

### Conclusion

The judgment of the trial court entering summary judgment in favor of Vitek is reversed. We remand the matter for further proceedings consistent with this opinion.

Kurt S. Odenwald, Judge

Mary K. Hoff, P.J., Concurs
Angela T. Quigless J., Concurs

21