**John EASLEY, Respondent,**

v.

**GRAY WOLF INVESTMENTS, LLC, D/B/A AAA Mini Storage, Appellant.**

**No. ED 94922.**

Missouri Court of Appeals, Eastern District, Division Five.

April 5, 2011.

1. Section 455.516 RSMo was originally enacted in 1987, and has since been amended in 1989, 1995, 2003, and 2005.

John Michael Easley, Cape Girardeau, MO, Acting pro se.

David Roth II, Cape Girardeau, MO, for Respondent.

## OPINION

MARY K. HOFF, Judge.

Gray Wolf Investments, LLC, doing business as AAA Mini Storage (Gray Wolf), appeals from the judgment of the trial court (Judgment) in favor of John Easley (Easley) on Easley's claim for damages to his personal property.[1] We reverse.

---

1. Easley did not file a responsive brief on appeal.

*Factual and Procedural Background*

Gray Wolf owned and operated a self-storage facility in Cape Girardeau. On May 8, 2007, Easley and Gray Wolf entered into a rental agreement for a storage unit in Gray Wolf's facility. Easley planned to store furniture in the storage unit while he built a new home. The Rental Agreement provided, in pertinent part,

SECTION 9—LIABILITY AND INSURANCE

This Rental Agreement is made on the express condition that the Operator is not responsible for and shall be free from all liability and claims for damages by reason of injuries of any kind to any person, including Occupant, or to any property of any kind whatsoever and to whomsoever while in, upon, or in any way connected with the premises, during the term of this Rental Agreement or any extension thereof or any occupancy thereunder, including losses occasioned or caused by negligence, acts or omissions by Operator. Occupant hereby agrees to save and hold Operator harmless from any liability, loss, cost, or obligation on account of or arising out of any such injuries or losses however occurring and claims brought against Operator as the result thereof. *Occupant, at Occupant's own expense, shall maintain his own insurance including but not limited to a policy of fire, flood, extended coverage, burglary, theft, vandalism, and malicious mischief endorsements, for the actual cash value of such property in the storage space.* This insurance is for the benefit of both Occupant and Operator or Operator's agents or employees, and Occupant will indemnify Operator for such claim brought by Occupant's insurer against Operator.

Easley and Gray Wolf's agent signed the Rental Agreement. Easley then signed a separate addendum to the Rental Agreement titled "Tenant Responsibility Addendum" (the Addendum). The Addendum provided

*TENANTS STORE GOODS AT THEIR OWN RISK.* AAA Mini Storage and/or its management:

— Is not responsible for loss or damage to tenant's property.

— Does not provide insurance for loss or damage to tenant's property.

— Requires that the Tenant provide their [sic] own insurance coverage.

— Is a commercial business renting space and is not a bailee or warehouseman.

I acknowledge that I have read the above information and accept the terms of this Addendum, as well as the terms of the Rental Agreement.

Two years later, in May 2009, Easley retrieved his furniture from the storage unit. He discovered that the drywall ceiling was "coming down" in the storage unit and that some of the furniture was covered with mold. Easley informed Gray Wolf of the damage, but Gray Wolf directed Easley to file a claim with his insurance company. Easley contacted his insurance company, and an adjustor inspected the storage unit and the roof of Gray Wolf's facility. The adjustor's inspection of the storage facility's roof revealed clogged rain gutters, exposed nail heads that should have been covered with seals, and roof "caps" covered with expanding foam that prevented the storage unit from being allowed to "breathe." The insurance company subsequently denied Easley's claim on the ground that the policy did not cover damage due to neglect or lack of maintenance.

Easley filed a petition in small claims court alleging that the roof of Gray Wolf's facility leaked, allowing water to enter the storage unit he had rented and ruining some of his furniture. After a hearing on Easley's petition, the court entered judgment in favor of Gray Wolf. Easley thereafter filed his application for trial *de novo.*

At trial, Easley, acting *pro se,* testified that he had entered into the Rental Agreement and the Addendum with Gray Wolf and that he had procured an insurance policy to protect the items he stored in the storage unit. Easley testified that he placed his furniture in the storage unit in May 2007 and did not check on the furniture for two years. Easley testified at length regarding Gray Wolf's alleged faulty or neglectful maintenance of the storage facility, which included clogged rain gutters. Easley also testified regarding the information he received from his insurance company about Gray Wolf's improper sealing of roof "caps" on the facility's roof. Gray Wolf did not present any evidence.

The trial court subsequently entered its Judgment in favor of Easley, finding that the language in Section 9 of the Rental Agreement did not absolve Gray Wolf of "its duty to properly maintain the premises in order that they may be used for the purpose for which they are rented to tenants." The trial court further found that Gray Wolf had a duty to maintain its building and that Gray Wolf had breached a covenant to repair; thus, Gray Wolf was responsible for actual damages directly, immediately, or proximately resulting as a consequence of the breach.

Gray Wolf subsequently filed its Motion for Judgment as a Matter of Law, Motion to Amend the Judgment, and in the Alternative, Motion for New Trial (motion for new trial). The motion for new trial was overruled by operation of the 90–day rule

under Missouri Supreme Court Rules 78.06 and 81.05. This appeal followed.

## Standard of Review

This case was tried before the court without a jury; thus, we review the case pursuant to Rule 84.13(d). We will affirm the judgment unless it is not supported by substantial evidence, it is against the weight of the evidence, or it erroneously declares or applies the law. *Artilla Cove Resort, Inc., v. Hartley,* 72 S.W.3d 291, 293 (Mo.App. S.D.2002); *Murphy v. Carron,* 536 S.W.2d 30, 32 (Mo. banc 1976).

## Release of Liability

■ In its sole point on appeal, Gray Wolf claims the trial court erred in granting judgment for Easley because Missouri law recognizes releases of future negligence contained in a contract. Gray Wolf argues that Easley entered into a contract with Gray Wolf and that the terms of the contract released Gray Wolf from liability for damages to the items stored in Easley's rented storage unit.

■ Although exculpatory clauses in contracts releasing one party from its own future negligence are disfavored, such clauses are not prohibited as against public policy. *Alack v. Vic Tanny International, Inc.,* 923 S.W.2d 330, 334 (Mo. banc 1996); *Milligan v. Chesterfield Village GP, LLC,* 239 S.W.3d 613, 616 (Mo.App. S.D.2007). Furthermore, contracts exonerating one party from acts of future negligence are to be "strictly construed against the party claiming the benefit of the contract." *Alack,* 923 S.W.2d at 334. Clear, unambiguous, unmistakable, and conspicuous language is required to release a party from his or her future negligence. *Id.* at 336. "It is a 'well-established rule of construction that a contract provision exempting one from liability for his or her negligence will never be implied but must be

clearly and explicitly stated.'" *Id.*, quoting *Poslosky v. Firestone Tire and Rubber Co.*, 349 S.W.2d 847, 850 (Mo.1961). To exonerate the landlord from its own acts of negligence, the exculpatory clause must be in plain terms. *Industrial Risk Insurers v. Industrial Design & Mfg., Inc.*, 884 S.W.2d 432, 434 (Mo.App. S.D.1994).

Here, Gray Wolf's point on appeal is well taken.

First, the Rental Agreement and the Addendum clearly and explicitly stated that Easley, by entering into the Rental Agreement, was releasing Gray Wolf from liability for any damage to Easley's property "occasioned or caused by negligence, acts or omissions" of Gray Wolf. Section 9 of the Rental Agreement, titled in all capital letters "LIABILITY AND INSURANCE," appeared in the middle of the second page of the Rental Agreement and was printed in the same size type as the rest of the Rental Agreement. The Addendum was a separate page from the Rental Agreement and clearly and explicitly stated in all capital letters "TENANTS STORE GOODS AT THEIR OWN RISK." The Addendum also reiterated the meaning of Section 9: Gray Wolf was "not responsible for loss or damage to tenant's property." Easley signed both the Rental Agreement and the Addendum, indicating he had reviewed and agreed to the terms of the contract. The Rental Agreement's release and the Addendum were simple and clear, and it was Easley's free choice to release Gray Wolf from a claim of negligence and to rent the storage unit or to refuse to execute the release and not rent the storage unit. *See Alack*, 923 S.W.2d at 336.

Second, significantly, the evidence established that Easley was a relatively sophisticated party contracting at arm's length with Gray Wolf. Easley stored his furniture in the storage unit because he was building a 2,613–square–foot home with a walk-out basement. Easley testified that he was an expert "[o]n some construction [methods]" because he had co-owned a "foundation business." Easley testified that the slab concrete floor of Gray Wolf's facility should have been "pitched" so that moisture drained from the back to the front of the storage unit but that the pitch was not correct and caused moisture to gather. Easley admitted that he did not notice this problem when he initially stored his furniture, yet he "had peace of mind with the facility" when he entered into the Rental Agreement and the Addendum. Easley also admitted that he left the furniture in the storage unit for two years without inspecting its condition.

Third, contrary to the trial court's Judgment, the Rental Agreement did not confer upon Gray Wolf any duty to maintain its building and did not contain any covenant to repair. At trial *de novo*, Easley's theory for recovery rested upon his argument that Gray Wolf was under a duty to maintain its facility in a non-negligent manner or to repair damage to the facility. Easley testified that his insurance company refused to pay on his policy because the damage to the furniture had resulted from "leaks in metal roof seams and screws over time" and because the insurance policy did not cover neglect or maintenance issues. However, no provision in the Rental Agreement indicated that Gray Wolf had agreed to maintain or to repair its facility in a non-negligent manner. In fact, at trial, Easley admitted that the Rental Agreement stated that Gray Wolf was not responsible for damage occurring because of negligence.

Given the record before us in this particular case, we find the weight of the evidence established that the Rental Agreement and the Addendum effectively notified Easley that he was releasing

claims for future negligence he might have had against Gray Wolf. *See Milligan,* 239 S.W.3d at 621 (applying *Alack*'s bright-line rule, appellate court found waiver of liability clause in lease agreement clearly, unambiguously, unmistakably, and conspicuously notified lessee that she was releasing lessor from claims arising from its negligence where clause used the terms "fault," "negligence," and "carelessness"). Point granted.

### Conclusion

The trial court's Judgment was not supported by substantial evidence; thus, the trial court erred in entering judgment for Easley. We therefore reverse the Judgment of the trial court.

GARY M. GAERTNER, JR., Presiding Judge and PATRICIA L. COHEN, Judge, concur.