

# In the Missouri Court of Appeals
## Eastern District
<u>DIVISION FOUR</u>

| | | |
|---|---|---|
| LYNNE MCNEARNEY, | ) | No. ED102905 |
| | ) | |
| Appellant, | ) | Appeal from the Circuit Court |
| | ) | of St. Louis County |
| vs. | ) | |
| | ) | |
| LTF CLUB OPERATIONS COMPANY, | ) | |
| INC., d/b/a LIFE TIME FITNESS, and | ) | Hon. John D. Warner, Jr. |
| MITCHELL WOODRUM, | ) | |
| | ) | |
| Respondent. | ) | FILED: January 12, 2016 |

## Introduction

Appellant Lynne McNearney ("McNearney") appeals from the judgment of the trial court granting summary judgment in favor of Respondents LTF Club Operations Company, Inc. d/b/a Life Time Fitness ("LTF") and Mitchell Woodrum ("Woodrum") (collectively referred to as "LTF"). McNearney was injured while participating in an exercise class at LTF supervised by Woodrum and filed suit alleging claims for personal injury. The trial court granted LTF's motion for summary judgment. On appeal, McNearney first contends that the exculpatory clauses contained within two agreements entered into between McNearney and LTF did not release LTF from liability for its negligent conduct, and therefore could not support the trial court's grant of summary judgment. McNearney further argues summary judgment was

improper because LTF failed to show that it was entitled to judgment as a matter of law on the basis of uncontroverted material facts.

Because McNearney released LTF from any claim of negligence as a matter of law by signing the Member Usage Agreement, the trial court properly granted summary judgment in favor of LTF with respect to McNearney's allegations of negligence. Because LTF demonstrated its right to judgment as a matter of law on McNearney's claim for recklessness, the trial court properly entered summary judgment in favor of LTF. Accordingly, we affirm the judgment of the trial court.

### Factual and Procedural History

Viewed in the light most favorable to the non-moving party, the record contains the following uncontested facts.

McNearney joined LTF and electronically signed a Member Usage Agreement on June 30, 2008. The Member Usage Agreement signed by McNearney contained a paragraph entitled "**RELEASE OF LIABILITY**" in large, bold capital letters. The paragraph read as follows:

> I waive any and all claims or actions that may rise against Life Time Fitness, Inc., its affiliates, subsidiaries, successors or assigns (collectively "Life Time Fitness") as well as each party's owners, directors, employees or volunteers as a result of such injury, loss, theft or damage to any such person, including, and without limitation, personal, bodily or mental injury, economic loss or any damage to me, my spouse, my children, or guests resulting from the negligence of Life Time Fitness or anyone using a Life Time Fitness Center. I agree to defend, indemnify and hold Life Time Fitness harmless against any claims arising out of the negligent or willful acts or omissions of me, any person that is a part of my membership, or any guest under this membership.

The next paragraph, in large, bold capital letters, stated: "**I HAVE READ AND AGREE TO THE TERMS AND CONDITIONS ABOVE, INCLUDING, BUT NOT LIMITED TO, THE ASSUMPTION OF RISK AND RELEASE OF LIABILITY, AND I HAVE RECEIVED A COMPLETE COPY OF MY MEMBER USAGE AGREEMENT.**"

2

Between October 8, 2011, and December 10, 2011, McNearney participated in a "boot camp" exercise class at LTF. McNearney signed a Fitness Program Agreement relating to her participation in this class. The Fitness Participants Agreement also contained an exculpatory clause releasing LTF any liability for its negligent conduct.

On March 5, 2012, McNearney was participating in a different "boot camp" exercise class at LTF. The class took place on LTF grounds using LTF equipment and was led by Woodrum, a personal trainer and employee of LTF. During the class, Woodrum instructed the participants to perform a two-person exercise with a partner involving a two-handled resistance band. McNearney had never performed this particular exercise but had used resistance bands in the past, including as part of a two-person partner exercise. Prior to March 5, 2012, McNearney understood how to use a two-handled resistance band; knew that the resistance band would stretch when the handles were pulled away from each other and un-stretch if one handle was released; understood that the further a two-handled resistance band was stretched the faster it would snap back into its original shape; and knew that if one partner in a two-person exercise released one handle, the released handle would move in the direction of the other partner.

Prior to McNearney and the other class members participating in the exercise, Woodrum explained how to perform the two-person resistance band exercise. Woodrum did not specifically address the possibile risk of the resistance band recoiling. During the exercise, McNearney's partner held the handles of the resistance band, while McNearney stood behind her partner and held the middle of the resistance band with a towel. McNearney's partner walked forward, causing the resistance band to stretch. During the exercise, McNearney's partner accidentally released one of the handles of the resistance band. The resistance band recoiled and

3

struck McNearney in the nose and mouth, breaking McNearney's nose and damaging or dislodging several of her teeth.

At the time of her injury, McNearney was assisting her partner by providing resistance. Woodrum chose the two-person resistance band exercise in question, and all class members were performing the exercise at the time of McNearney's injury. Woodrum did not dispute that there was a strong possibility of injury if a resistance band recoiled and hit an individual in the face. Woodrum stated that a trainer should always choose the safer exercise when possible. Woodrum also stated that different equipment could be used for this exercise, but no alternative equipment was available for this class.

After her injury, McNearney filed suit asserting negligence and recklessness claims against LTF. LTF filed a motion for summary judgment along with a supporting memorandum and a statement of uncontroverted material facts. LTF's motion for summary judgment asserted that LTF was entitled to judgment as a matter of law because the undisputed facts showed that (1) McNearney, by executing the Member Usage Agreement and Fitness Program Agreement, released LTF from any claims based upon LTF's negligence, and (2) McNearney failed to make a prima facie case of recklessness. Additionally, LTF argued that McNearney's original petition failed to properly plead avoidance of the release contained in the Member Usage Agreement.

The trial court granted McNearney leave to file an amended petition which properly pled avoidance. The amended petition, like the original petition, alleged separate counts of negligence and recklessness against both Woodrum and LTF.

McNearney filed a response in opposition to LTF's motion for summary judgment along with a supporting memorandum, a response to LTF's statement of uncontroverted material facts, and a list of additional uncontroverted material facts. LTF filed a reply, along with a response to

4

McNearney's statement of uncontroverted material facts and statement of additional uncontroverted material facts. McNearney subsequently filed a sur-reply to both LTF's reply and LTF's statement of additional uncontroverted material facts.

In support of her responses to LTF's statements of uncontroverted material facts and her own statements of uncontroverted material facts, McNearney relied upon four affidavits: one executed by McNearney herself; one by Judith Roberts ("Roberts"), another participant in the exercise class during which McNearney was injured; one by Douglas Baumgarten ("Baumgarten"), McNearney's proposed expert witness; and one by Melanie Baum ("Baum"), a paralegal who conducted internet research into resistance band exercise injuries. McNearney and Woodrum also testified extensively via deposition.

On March 23, 2015, the trial court entered an "Order/Judgment" granting LTF's motion for summary judgment. The trial court did not specify its rationale for granting summary judgment, other than stating that DeCormier v. Harley-Davidson Motor Co. Grp., Inc., 446 S.W.3d 668, was controlling. This appeal follows.

## Points on Appeal

McNearney raises two points on appeal. First, McNearney contends the trial court erred in granting LTF's motion for summary judgment on the basis of the Member Usage Agreement or the Fitness Program Agreement because neither release was a bar to McNearney's recovery. Specifically, McNearney claims the release language contained in these agreements do not bar her recovery because (1) they were not shown as a matter of law to apply to the exercise class in which McNearney was injured; (2) McNearney's injuries were caused by LTF's enhancement of any risk she putatively assumed in signing the releases; and (3) the type of injury suffered by McNearney was different in kind from the injuries for which she had putatively assumed the risk

5

in signing the releases. Second, McNearney avers the trial court erred in granting LTF's motion for summary judgment because LTF did not show that it was entitled to judgment as a matter of law on the basis of undisputed material facts. Specifically, McNearney argues that the summary judgment record includes material facts from which a jury reasonably could conclude that LTF's conduct exceeded mere negligence, and instead constituted reckless conduct that is not released by an exculpatory clause.

## Standard of Review

When considering an appeal from a grant of summary judgment, our review is essentially *de novo*. ITT Commercial Fin. Corp. v. Mid-Am. Marine Supply Corp., 854 S.W.2d 371, 376 (Mo. banc 1993). The propriety of summary judgment is purely an issue of law. Id. As the trial court's judgment is founded on the record submitted and the law, an appellate court need not defer to the trial court's order granting summary judgment. Id. Accordingly, this Court reviews the record in the light most favorable to the party against whom judgment was entered. Id. Facts set forth by affidavit or otherwise in support of a party's motion are taken as true unless contradicted by the non-moving party's response to the summary judgment motion, and we accord the non-movant the benefit of all reasonable inferences from the record. Id.

Summary judgment is designed to permit the trial court to enter judgment, without delay, where the moving party has demonstrated, on the basis of facts as to which there is no genuine dispute, a right to judgment as a matter of law. Id.; Rule 74.04. Summary judgment proceeds from an analytical predicate that, where the facts are not in dispute, a prevailing party can be determined as a matter of law. ITT Commercial Fin. Corp., 854 S.W.2d at 376. However, because summary judgment "borders on denial of due process in that it denies the opposing party

6

his day in court," the procedure has long been regarded as "an extreme and drastic remedy" which should be utilized with "great care." Id. at 377.

When a trial court has granted summary judgment without specifying the basis for granting the motion, this Court may affirm the trial court's decision under any appropriate theory. Cent. Missouri Elec. Co-op. v. Balke, 119 S.W.3d 627, 635 (Mo. App. W.D. 2003). Further, if the trial court's order does not set forth its reasoning, the trial court is presumed to have based its decision on the grounds specified in the motion for summary judgment. Id.

### Discussion

The purpose of summary judgment under Missouri's fact-pleading regime is to identify cases (1) in which there is no genuine dispute as to the facts and (2) the facts as admitted show a legal right to judgment for the movant. ITT Commercial Fin. Corp., 854 S.W.2d at 380. The burden on the summary judgment movant—here, LTF—is to show a right to judgment flowing from facts about which there is no genuine dispute. Id. at 378. Summary judgment tests simply for the existence, not the extent, of these genuine disputes. Id. The key to summary judgment is the undisputed right to judgment as a matter of law; not simply the absence of a fact question. Id. at 380.

Once the movant has made a prima facie showing that there are no genuine issues of material fact and that the movant is entitled to judgment as a matter of law, the burden shifts to the non-movant—here, McNearney. Id. at 381. Once the burden shifts, the non-movant "may not rest upon the mere allegations or denials of his pleading, but his *response*, by affidavits or as otherwise provided in this Rule 74.04, *shall set forth specific facts* showing that there is a genuine issue for trial." Id.; Rule 74.04(e). Thus, at that point "the non-movant's *only* recourse is to show—by affidavit, depositions, answers to interrogatories, or admissions on file—that one

7

or more of the material facts shown by the movant to be above any genuine dispute is, in fact, genuinely disputed." ITT Commercial Fin. Corp., 854 S.W.2d at 381.

LTF's motion for summary judgment claimed that LTF was entitled to judgment as a matter of law because (1) McNearney, by executing the Member Usage Agreement, released LTF from its own negligence, and (2) McNearney failed to make a prima facie case of recklessness.[1]

The non-movant never needs to establish a right to judgment as a matter of law; instead, "the non-movant need only show that there is a genuine dispute as to the facts underlying the movant's right to judgment." Id. at 381-82. McNearney made claims for both negligence and recklessness in her amended petition, meaning summary judgment in favor of LTF was only appropriate if LTF demonstrated the right to judgment as a matter of law based on undisputed facts with respect to each claim. We will consider each in turn.

## I. Point One—Member Usage Agreement

McNearney contends that neither the Member Usage Agreement nor the Fitness Program Agreement act as a bar to her negligence claim. As a result, McNearney maintains the trial court erred to the extent it granted summary judgment on the basis that either agreement did so.

The summary judgment evidence is clear that the Fitness Program Agreement does not bar McNearney's negligence claim. LTF concedes, and conceded before the trial court during the extensive litigation surrounding the motion for summary judgment, that the Fitness Program Agreement signed by McNearney was applicable only to an earlier exercise class in which McNearney participated, and *not* to the exercise class in which McNearney was injured. However, we hold that exculpatory clause contained within the Member Usage Agreement is

---

[1] LTF also argued that McNearney's original petition failed to properly plead avoidance of the release contained in the Member Usage Agreement. This argument was subsequently rendered moot when the trial court granted McNearney's request to file an amended petition which properly pled avoidance.

8

applicable and unambiguous, and precludes McNearney from pursuing a claim of negligence against LTF.

Exculpatory clauses which release an individual or entity from his or her own future negligence, while disfavored, are not prohibited as against public policy. Alack v. Vic Tanny Int'l of Missouri, Inc., 923 S.W.2d 330, 334 (Mo. banc 1996). However, such clauses will be "strictly construed against the party claiming the benefit of the contract, and clear and explicit language in the contract is required to absolve a person from such liability." Hornbeck v. All American Indoor Sports, Inc., 898 S.W.2d 717, 721 (Mo. App. W.D. 1995). Missouri courts "require clear, unambiguous, unmistakable, and conspicuous language in order to release a party from his or her own future negligence." Alack, 923 S.W.2d at 337. The exculpatory language must effectively notify a party that he or she is releasing the other party from claims arising from the other party's own negligence; general language will not suffice. Id. As a result, "[t]he words 'negligence' or 'fault' or their equivalents must be used conspicuously so that a clear and unmistakable waiver and shifting of risk occurs." Id. There must be no doubt that a reasonable person agreeing to an exculpatory clause actually understands what future claims he or she is waiving. Id. at 337-338.

Missouri courts ruling on the issue have held that an exculpatory clause must clearly and explicitly state the nature and extent of the waiver. See Alack, 923 S.W.2d 330; Easley v. Gray Wolf Investments, LLC, 340 S.W.3d 269 (Mo. App. E.D. 2011). In considering the ambiguity of language used in an exculpatory clause waiving negligence, a "key factor" is the actual presence of the words "negligence" or "fault." Abbott v. Epic Landscape Productions, L.C., 361 S.W.3d 13, 17 (Mo. App. W.D. 2011). "The words 'negligence' or 'fault' or their equivalents must be used conspicuously." Id.

9

The parties do not dispute the relevant facts regarding the Member Usage Agreement. Neither party disputes that McNearney signed the Member Usage Agreement or that the Member Usage Agreement included a paragraph purporting to release LTF from claims for its own negligence. Specifically, the Member Usage Agreement signed by McNearney contained a paragraph entitled "**RELEASE OF LIABILITY**" in large, bold capital letters. The paragraph read as follows:

> I waive any and all claims or actions that may rise against Life Time Fitness, Inc., its affiliates, subsidiaries, successors or assigns (collectively "Life Time Fitness") as well as each party's owners, directors, employees or volunteers as a result of such injury, loss, theft or damage to any such person, including, and without limitation, personal, bodily or mental injury, economic loss or any damage to me, my spouse, my children, or guests *resulting from the negligence of Life Time Fitness* or anyone using a Life Time Fitness Center. I agree to defend, indemnify and hold Life Time Fitness harmless against any claims arising out of the negligent or willful acts or omissions of me, any person that is a part of my membership, or any guest under this membership. (emphasis added)

The next paragraph, in large, bold capital letters, stated: "**I HAVE READ AND AGREE TO THE TERMS AND CONDITIONS ABOVE, INCLUDING, BUT NOT LIMITED TO, THE ASSUMPTION OF RISK AND RELEASE OF LIABILITY, AND I HAVE RECEIVED A COMPLETE COPY OF MY MEMBER USAGE AGREEMENT.**" McNearney's electronic signature follows, dated June 30, 2008.

Consistent with the requirements of Missouri law, the exculpatory language contained in the Member Usage Agreement was clear, conspicuous, and unambiguous, and acts as a bar to McNearney's negligence claim against LTF. The language releasing LTF from its own negligence specifically uses the term "negligence" and is explicit in its wording. In fact, similarly-worded exculpatory clauses releasing parties from their own negligence have been upheld as unambiguous by Missouri courts. See, e.g., Easley, 340 S.W.3d at 271 (releasing Operator from "all liability and claims... including losses occasioned or caused by negligence,

10

acts or omissions by Operator"); Abbott, 361 S.W.3d at 18 (releasing landlord from "any and all liability even though the claim, or loss or casualty is attributable to the negligence of the landlord or its employees or agents"). Further, the exculpatory clause is conspicuous. "A term or clause is 'conspicuous' if it is 'clearly visible or obvious.'" Abbott, 361 S.W.3d at 17. "Whether a printed clause is conspicuous as a matter of law usually depends on the size and style of the typeface." Id. The language releasing LTF from its own negligence is contained within a paragraph prominently entitled "**RELEASE OF LIABILITY**," and is followed by another separate paragraph, also in bold, capital letters, which again references the "**RELEASE OF LIABILITY**." The typeface alerted McNearney to her release of liability and set the paragraph containing the exculpatory clause apart from the rest of the document. The size and style of the typeface in the Member Usage Agreement made the exculpatory clause conspicuous. See Easley, 340 S.W.3d at 273 (finding exculpatory clause conspicuous where the paragraph heading was titled "LIABILITY AND INSURANCE' in all capital letters and appeared in the middle of the second page of the agreement).

Further, the parties do not dispute that McNearney was injured on LTF's premises, during an LTF boot camp exercise class using LTF equipment, and under the direction of an LTF employee. However, as a matter of law, given the uncontroverted language and facts related to the Member Usage Agreement, the exculpatory clause of the Member Usage Agreement released LTF from any claims McNearney may have against LTF and LTF employees resulting from the negligence of LTF. Thus, to the extent McNearney's amended petition asserted a cause of action for negligence for the injuries she suffered, during an LTF exercise class while on LTF property, she released LTF and Woodrum (an LTF employee) from any such claim as a matter of law by

11

signing the Member Usage Agreement. Accordingly, the trial court properly granted summary judgment in favor of LTF with respect to McNearney's negligence claim.[2] Point One is denied.[3]

## II. Point Two—Recklessness

While the exculpatory clause of the Member Usage Agreement signed by McNearney bars her *negligence* claim, Missouri law is clear that a party cannot release itself from its own *recklessness*. Hatch v. V.P. Fair Found., Inc., 990 S.W.2d 126, 140 (Mo. App. E.D. 1999); Alack, 923 S.W.2d at 337. Thus, McNearney's recklessness claim is not barred by the Member Usage Agreement. Accordingly, we must determine whether LTF demonstrated a right to judgment as a matter of law on the basis of undisputed facts with respect to McNearney's allegations of recklessness. If LTF has made a prima facie showing that there were no genuine issues of material fact and that LTF was entitled to judgment as a matter of law, the burden shifts to McNearney to set forth specific facts showing that there is a genuine issue for trial. Rule 74.04(e); ITT Commercial Fin. Corp., 854 S.W.2d at 381. If McNearney is unable to show "that one or more of the material facts shown by [LTF] to be above any genuine dispute is, in fact, genuinely disputed," then the trial court properly entered summary judgment in favor of LTF. ITT Commercial Fin. Corp., 854 S.W.2d at 381.

    A. LTF made a prima facie showing that it was entitled to judgment as a matter of law on the basis of undisputed material facts.

---

[2] McNearney's contention that the exculpatory clause of the Member Usage Agreement contains a latent ambiguity due to the existence of the Fitness Program Agreement is unavailing. This issue was never raised before the trial court, and the record is completely lacking of any factual evidence supporting McNearney's theory of ambiguity. The record contains no information providing context regarding the relationship, if any, between the two Agreements, such as whether non-LTF members were allowed to participate in fitness classes.

[3] McNearney's assertion that her injury was different than the risk she assumed in signing the Member Usage Agreement and that LTF's enhancement of the risk caused her injury is similarly unavailing. McNearney misguidedly cites Coomer v. Kansas City Royals Baseball Corp., 437 S.W.3d 184 (Mo. banc 2014) as support for her argument. Coomer, however, was decided on the issue of an implied assumption of risk. Here, McNearney signed a waiver expressly releasing LTF from its own negligence. Assumption of the risk is not at issue in this matter, and therefore Coomer is not applicable.

12

Missouri recognizes a cause of action for recklessness, which our Supreme Court has defined as when an actor either intentionally does an act or fails to do an act:

> [W]hich it is [the actor's] duty to the other to do, knowing or having reason to know of facts which would lead a reasonable man to realize that the actor's conduct not only creates an unreasonable risk of ... harm to the other but also involves a high degree of probability that substantial harm will result to [the other.]

DeCormier v. Harley-Davidson Motor Co. Group, Inc., 446 S.W.3d 668, 672 (Mo. banc 2014) (quoting Nichols v. Bresnahan, 212 S.W.2d 570, 573 (Mo. 1948)).[4] "Recklessness looks to the tortfeasor's state of mind" and is applied to "conduct which is negligent, rather than intentional, but which is so far from a proper state of mind that it is treated in many respects as if it were so intended." Hatch, 990 S.W.2d at 139.

In support of her recklessness claim, McNearney advanced two theories. First, McNearney alleged that Woodrum was reckless for failing to warn McNearney of both the unreasonably dangerous elastic properties of the resistance band as well as the danger associated with the two-person resistance band exercise. Second, McNearney alleged that LTF was reckless for instructing McNearney to engage in an unreasonably dangerous two-person resistance band exercise when Woodrum knew or should have known that the exercise was unreasonably dangerous, was foreseeably likely to cause McNearney injury, and involved a high degree of probability that substantial harm would result.

With respect to McNearney's failure-to-warn claim, the following undisputed material facts were adduced. McNearney's injury occurred while she was performing a two-person resistance band exercise. Prior to the date of her injury, McNearney had used a resistance band

---

[4] McNearney devotes a significant portion of her appellate brief to arguing that Missouri courts defining recklessness have repeatedly cited to the wrong edition of the Restatement. We are bound by the decisions of our Supreme Court under the firmly established doctrine of *stare decisis*. See State v. Honeycutt, 421 S.W.3d 410, 422 (Mo. banc 2013). Accordingly, the definition of recklessness stated by the Supreme Court in DeCormier and other cases is controlling.

13

as part of a two-person exercise, but had never previously participated in the particular exercise during which she was injured. Prior to her injury, McNearney knew the following: how a two-handled resistance band like the one she was using when injured worked; that a two-handled resistance band would stretch when the handles were pulled away from each other and un-stretch if one handle was released; that the further a two-handled resistance band was stretched the faster it would snap back into its original shape; and that if one partner in a two-person exercise released one handle, the released handle would move in the direction of the other partner. Finally, there was no dispute that Woodrum explained how to perform the two-person resistance band exercise before McNearney participated in the exercise, but that Woodrum did not explain the possibility of the specific risk of recoil prior to McNearney participating in the exercise.

On the basis of the foregoing undisputed facts, we hold that LTF had no duty as a matter of law to warn McNearney about the recoil capability of the resistance band used during the two-person exercise because McNearney had actual knowledge of such information. There is no duty to warn of a danger when the injured party has actual knowledge of the danger. Shine v. Sw. Bell Tel. Co., 737 S.W.2d 203, 205 (Mo. App. E.D. 1987); see also Young v. Wadsworth, 916 S.W.2d 877, 878 (Mo. App. E.D. 1996). In the absence of any duty to warn McNearney of the recoil danger of the resistance band, LTF was not negligent, much less reckless, for failing to do so.

With respect to McNearney's claim that LTF was reckless in directing her to participate in the two-person resistance band exercise, the following undisputed material facts were before the trial court. Woodrum instructed McNearney to participate in a two-person resistance band exercise in which one participant held the handles and walked forward while the other participant held the middle of the resistance band to provide resistance. Woodrum chose the exercise, and

14

everyone in the exercise class was performing the exercise at the time of McNearney's injury. McNearney was assisting her partner by providing resistance when the injury occurred. Finally, Woodrum stated that there is a strong possibility of injury if a resistance band recoils and hits an individual in the face; that a trainer should always choose the safer exercise when possible; that the members of the class could have used different equipment for the exercise but no other such equipment was available; that every exercise has risk; and that it is not reckless, in and of itself, to perform a partner exercise using resistance bands, although it depends on the exercise.

Based on these undisputed material facts, we hold that LTF and Woodrum were not reckless in directing McNearney to participate in the two-person resistance band exercise during which she was injured. The foregoing facts would not lead a reasonable person to realize that a two-person resistance band exercise—a common type of exercise—utilizing a two-handled resistance band—a common piece of gym equipment—would create a high degree of probability of substantial harm to the members of the class. McNearney's own expert witness admitted that resistance band exercises are not *per se* reckless, and in fact, McNearney had utilized resistance bands during exercises in the past without incident. Nothing within the undisputed facts before the trial court indicates that this particular two-person resistance band exercise was more dangerous than any other, such that a reasonable person should have been aware of a heightened risk of substantial harm to the participants. At most, the undisputed facts indicate that Woodrum failed to properly monitor McNearney's conduct during the exercise to prevent her from holding the resistance band near her head and face. This failure may have constituted negligent conduct by Woodrum, but we are unwilling to hold that Woodrum's actions were "so far from a proper state of mind" as to be treated as intentional. Hatch, 990 S.W.2d at 139. Thus, Woodrum and LTF's actions were not reckless.

15

B. McNearney failed to create a genuine issue of material fact.

Once LTF established its right to judgment as a matter of law on the basis of the above undisputed material facts, the burden shifted to McNearney to "set forth specific facts showing that there is a genuine issue for trial." Rule 74.04(e). A party cannot rely on its own petition to provide the necessary evidentiary support for additional facts alleged in response to a summary judgment motion, as the purpose of summary judgment is to move the parties beyond the bare allegations in their pleadings. DeCormier, 446 S.W.3d at 672. Accordingly, McNearney's "only recourse [was] to show—by affidavit, depositions, answers to interrogatories, or admissions on file—that one or more of the material facts shown by the movant to be above any genuine dispute [was], in fact, genuinely disputed." ITT Commercial Fin. Corp., 854 S.W.2d at 381. McNearney has failed to do so.

We are mindful that only "[f]acts of such probative value as would control or determine the litigation constitute 'material facts.'" Irwin v. Wal-Mart Stores, Inc., 813 S.W.2d 99, 102 (Mo. App. W.D. 1991). The record must demonstrate a factual question that would permit a reasonable jury to return a verdict for the nonmoving party. Id. Against this backdrop, McNearney attempted to show the existence of two disputed material facts.[5]

McNearney first attempted to create a genuine issue of material fact by arguing that she was not aware of the "extreme" recoil properties of the resistance band prior to the date of her injury. In support of this factual contention, McNearney cited her own affidavit. Additionally, McNearney attempted to create a genuine issue of material fact with respect to the instruction given by Woodrum. While the parties did not dispute that Woodrum instructed McNearney and the other class members on how to perform the two-person resistance band exercise generally,

---

[5] There were certain additional disputed facts raised by McNearney that are simply not material. The two facts discussed below are the only facts present in the record that are of such probative value as would control or determine the litigation.

16

McNearney stated that Woodrum specifically "instructed and directed [her] to perform the two-person resistance band exercise in such a way that created a line of pull to [her] head, neck, and face." Again, the sole support for this factual contention is found in McNearney's affidavit.[6]

A party may not avoid summary judgment by providing inconsistent testimony and then offering those inconsistencies into the record for the purpose of demonstrating the existence of a genuine issue of material fact. Stanbrough v. Vitek Sols., Inc., 445 S.W.3d 90, 103 (Mo. App. E.D. 2014) (citing ITT Commercial Fin. Corp., 854 S.W.2d at 388). "The utility of summary judgment as a procedure for screening out sham issues of fact would be diminished if a party who has been examined at length on deposition could raise an issue of fact simply by submitting an affidavit contradicting his own earlier testimony." Id. As this Court explained in Stanbrough, Missouri courts "have applied this principle to exclude an affidavit offered in a summary judgment proceeding when the affidavit contradicts the affiant's previous *sworn deposition testimony.*" Id. The only important caveat to this general rule is that the evidence must be affirmatively contradictory. Calvert v. Plenge, 351 S.W.3d 851, 856 (Mo. App. E.D. 2011). We find that McNearney's affidavit affirmatively contradicts her prior deposition testimony with regard to each of the two facts above, such that the affidavit fails to create a genuine issue of material fact sufficient to avoid summary judgment.

First, McNearney's statement in her affidavit that she was not aware of the "extreme" recoil properties of the resistance band directly conflicts with her extensive deposition testimony on the issue, as well as with her own responses to LTF's statement of uncontroverted material facts. McNearney testified, and later confirmed that she did not dispute, that she had used a

---

[6] McNearney also cited Roberts's affidavit in support of this factual contention. However, Roberts's affidavit does not contain a statement that Woodrum instructed the class members to perform the exercise in a way that created a line of pull to the participants' faces. Instead, Roberts's affidavit only states that Woodrum instructed the class members and did not "warn" them "about the line of pull associated with the exercise."

17

resistance band prior to her injury; that she knew how a two-handled resistance band worked; that she knew a two-handled resistance band would stretch when the handles were pulled away from each other and un-stretch if one handle was released; that she knew if one partner in a two-person exercise released one handle, the released handle would move in the direction of the other partner; and that she knew the further a two-handled resistance band was stretched the faster it would snap back into its original shape. Such testimony directly and affirmatively contradicts McNearney's sworn affidavit that she was not aware of the extreme recoil properties of the resistance band. McNearney's addition of the adjective "extreme" in her affidavit does nothing to change this contradiction and fails to create a genuine issue of material fact.

Second, McNearney's contention in her affidavit that Woodrum specifically "instructed and directed [her] to perform the two-person resistance band exercise in such a way that created a line of pull to [her] head, neck, and face" directly conflicts with her prior deposition testimony. During her deposition, McNearney testified that Woodrum explained how to do the two-person resistance band exercise, but that she did not "recall the actual instruction from that day." She later testified that none of the class members were instructed on which resistance bands to use, and that "individuals were not instructed in any form." This testimony directly and affirmatively contradicts McNearney's sworn statement contained in her later affidavit that Woodrum instructed and directed her to perform the exercise in such a way that created a line of pull to her head, neck, and face. Thus, McNearney's affidavit fails to create a genuine issue of fact as to this matter.

C. Summary judgment was proper with respect to McNearney's recklessness claim.

Because LTF demonstrated a right to judgment as a matter of law, and because McNearney failed to set forth specific facts showing that there was a genuine issue of disputed

18

material fact for trial, the trial court properly entered summary judgment in favor of LTF with respect to McNearney's recklessness claim. Point Two is denied.

Conclusion

The judgment of the trial court is affirmed.

KURT S. ODENWALD, Judge

Sherri B. Sullivan, P.J., concurs.
Lisa S. Van Amburg, C.J., concurs.