Lisa JOHNSON, Appellant,

v.

**LOU FUSZ AUTOMOTIVE NETWORK, INC.,**
Respondent.

No. ED 104593

Missouri Court of Appeals,
Eastern District,
DIVISION THREE.

Filed: February 28, 2017

Motion for Rehearing and/or Transfer to Supreme Court Denied April 10, 2017.

Application for Transfer Denied June 27, 2017

See also 2014 WL 7338820.

Kevin J. Dolley, Michael G. Mueth, Jr., St. Louis, MO, for Appellant.

Erin E. Williams, Andrew L. Metcalf, St. Louis, MO, for Respondent.

Lisa Johnson appeals from the judgment dismissing her claim for employment discrimination and from the summary judgment denying her claim for unpaid over-

time. We affirm the judgment, as modified herein.

Johnson was employed by Lou Fusz Automotive Network, Inc. as a fleet leasing agent for sixteen years before she was terminated in January 2013. After filing discrimination charges with the relevant agencies,[1] Johnson filed this lawsuit. Therein, she asserted one count of employment discrimination based on her association with her son who has a disability in violation of the Missouri Human Rights Act ("MHRA") and one count for a violation of the Missouri Minimum Wage Law ("MMWL") based on unpaid overtime. The court dismissed the MHRA count with prejudice on the ground that it was preempted by the federal Employee Retirement Income Security Act ("ERISA") and, therefore, the state court lacked subject matter jurisdiction over that claim. The court entered summary judgment against Johnson on her claim for unpaid overtime. We will address each of the claims separately in this opinion.

### MHRA Discrimination Claim and ERISA Preemption

The petition contains the following allegations with respect to Johnson's MHRA claim. Johnson received health insurance benefits through her employer, Lou Fusz. It is undisputed that this benefits plan qualifies as an ERISA plan. It included coverage for Johnson's son, who has had a disability caused by a brain malformation since his birth in 2006. Her son has had multiple surgeries, and his condition must be regularly monitored by angiograms and CT scans, all of which require multiple hospital admissions. Lou Fusz was aware that Johnson's son had this condition, that it would continue and was not curable and that it substantially limited his major life

---

1. Johnson filed discrimination charges with the Missouri Human Rights Commission and the Equal Employment Opportunities Commission. Both commissions issued notice of right to sue letters.

activities—thus, she alleged, it was a "disability" under the MHRA. See Section 213.010(4) RSMo.

Johnson alleged that the medical costs of monitoring and treating her son's condition were covered by Lou Fusz's group health insurance policy, and Lou Fusz knew that the condition was covered. "The serious and continuing nature of [her son's] medical condition led to increased costs in the medical insurance provided to Johnson as a benefit of her employment," and Lou Fusz "was aware of incurring continuing and increasing costs associated with insuring Johnson's family as a result of [her son's] disability." Lou Fusz was "aware of the extensive expenses it incurred as a result of insuring [her son's] medical care through Johnson" and "knew that [he] would require consistent medical monitoring, hospital stays, and treatment for his continuing disability."

Johnson alleged that during the telephone conversation with her supervisor in which she was terminated, the supervisor informed Johnson that Lou Fusz eliminated her position "to 'cut company employment costs,'" "repeatedly mentioned [her son's] disability and how Johnson's termination placed her in a 'bad position' regarding [his] medical costs" and "directly stated" that Johnson "would no longer be able to rely on the insurance policy" to cover her son's "extensive medical expenses." Johnson alleged that after her termination, the employee who took over her position was paid more to perform the same duties and that other employees whose positions were also eliminated were offered other positions. Johnson was never offered an alternative position at Lou Fusz.

Johnson alleged that her association with her son "served as a contributing or motivating factor in the decision of [Lou Fusz] to terminate Johnson" and alleged as evidence thereof: the direct statements her supervisor made "tying the termination to animus and [the son's] medical coverage and associated expenses;" the failure to offer her an alternative job like other employees whose positions were eliminated; and Lou Fusz's "knowledge of [her son's] disability and the fact that [it] would continue to face the cost of insuring [his] necessary and continuing medical treatment through Johnson." In this way, she alleged, Lou Fusz unlawfully discriminated and retaliated against Johnson because of her association with her son in violation of the MHRA. See Section 213.070(4) RSMo (prohibiting discrimination "in any manner against any other person because of such person's association with any person protected by this chapter"). Johnson sought compensatory and punitive damages, including lost wages and other benefits of employment, among other relief.

Lou Fusz filed its answer and asserted affirmative defenses, none of which were based on an argument that Johnson's MHRA claim was preempted by ERISA. But later, after taking Johnson's deposition, Lou Fusz attempted to remove the case to federal court based on ERISA. The case was remanded to the state court, however, because the notice of removal had not been timely filed. See Johnson v. Lou Fusz Automotive Network, Inc., 2014 WL 7338820 (E.D. Mo. December 22, 2004). Thereafter, Lou Fusz filed an amended answer in state court and moved to dismiss the MHRA claim for lack of subject matter jurisdiction because that claim was preempted by ERISA and therefore the federal courts had exclusive jurisdiction over it.

Attached to Lou Fusz's motion to dismiss were excerpts of Johnson's deposition testimony. In those excerpts, Johnson testified that when she went to find insur-

ance after she was fired, the insurance agents said her son was uninsurable except through an employer and that her termination sounded suspicious, which confirmed what she had been thinking already. One agent recommended an attorney and told Johnson he believed she had a claim for discrimination. She was asked at the deposition if she was alleging that Lou Fusz discriminated against her "based on the costs of [your son's] disability," and she answered "yes." She was asked if she was claiming that the reason she was terminated was "to avoid paying for the medical insurance, the increasing costs of his treatment and insurance." Johnson said "yes." She also testified at the deposition that she believed that the individuals who were responsible for deciding to terminate her were aware of the cost of her son's treatment and "the cost of the insurance covering him" when they made the decision to eliminate her position. When asked if "the desire to avoid making those payments was the motivating factor behind your termination of employment," Johnson answered "I think that they reasoned-in having to subsidize his continuing healthcare costs, yes." When asked what statements led her to believe that, she referred to the supervisor's comment that termination was leaving Johnson "in a bind with [her son] and insurance." She also said that comments were made during open enrollment meetings at Lou Fusz about rising healthcare costs and increases to insurance premiums. Johnson was unaware how the cost of her son's healthcare compared to the cost of covering other employees, but she believed other employees who had individual—not family—healthcare plans were treated better than her, "possibly" because they cost Lou Fusz less money.

Also attached to Lou Fusz's motion to dismiss were Johnson's interrogatories and requests for production of documents in which she sought, among other things: information and documents about the employer's group healthcare insurance, including the total annual cost of providing healthcare insurance to employees and the dollar amount expended to cover Johnson specifically; the percentage and dollar amount of employee premiums paid annually; information about how Lou Fusz chose insurance contracts and benefits levels; and whether any changes to benefits were made after Johnson's termination. A summary plan description of Lou Fusz's group healthcare plan was also attached to the motion.

After considering the record and hearing oral arguments, the trial court granted the motion to dismiss, finding that it lacked subject matter jurisdiction over Johnson's discrimination claim because it was preempted by ERISA—though it did not specify which type of preemption or otherwise explain its reasoning. The claim was dismissed with prejudice, and this appeal follows.

■ As a threshold matter, contrary to Johnson's contention on appeal, courts are not limited to the face of the pleadings in ruling on a motion to dismiss for lack of subject matter jurisdiction. See Rell v. Burlington Northern Railway Company, 976 S.W.2d 518, 520 (Mo. App. E.D. 1998). Rather, a motion to dismiss for lack of subject matter jurisdiction is to be granted "[w]henever it appears by suggestion of the parties or otherwise that the court lacks jurisdiction of the subject matter." Rule 55.27(g)(3). The portion of Rule 55 requiring notice to the parties before the court considers matters outside the pleadings expressly applies only to motions to dismiss *for failure to state a claim*. Rule 55(a). Thus, contrary to Johnson's argument, the trial court was free to consider the materials attached to Lou Fusz's mo-

tion for lack of subject matter jurisdiction when deciding that ERISA preempted this claim and it lacked subject matter jurisdiction. We review this decision for an abuse of discretion. See Reese v. U.S. Fire Insurance Company, 173 S.W.3d 287, 293 (Mo. App. W.D. 2005).

In the context of ERISA, there are two types of preemption of a state law cause of action: "express preemption" and "complete preemption." ERISA expressly preempts state causes of action that "relate to" employee benefit plans. See Section 514 of ERISA, codified at 29 U.S.C. 1144(a). ERISA completely preempts a state law cause of action if it falls within the comprehensive and exclusive enforcement scheme of ERISA. See Section 502(a) of ERISA, codified at 29 U.S.C. 1132(a). The two types of preemption are distinct doctrines to be analyzed separately. See, e.g., Fossen v. Blue Cross and Blue Shield of Montana, Inc., 660 F.3d 1102, 1111–12 (9th Cir. 2011) (citing Aetna Health Inc. v. Davila, 542 U.S. 200, 214 n.4, 124 S.Ct. 2488, 159 L.Ed.2d 312 (2004)). We find that Johnson's MHRA claim is completely preempted by ERISA and need not reach the issue of express preemption.

Complete preemption depends on whether Johnson's cause of action based on the MHRA actually falls within the comprehensive and exclusive enforcement scheme set forth in Section 502(a) of ERISA. Metropolitan Life Insurance Company v. Taylor, 481 US. 58, 66, 107 S.Ct. 1542, 95 L.Ed.2d 55 (1987). Section 502(a) enumerates the civil actions that may be brought under ERISA. 29 U.S.C. 1132(a)(1)–(11). One such authorized action is set forth in Section 502(a)(1)(B), which permits one to recover benefits due under an ERISA plan, enforce rights to plan benefits or clarify rights to future benefits under a plan; these are commonly referred to as "benefits-due" cases. Because of the frequency of benefits-due cases, there are numerous opinions in which the court determined complete preemption based on the fact that the claim fell within Section 502(a)(1)(B). Because that was the only subsection of Section 502(a) at issue, the "test" for complete preemption is often stated in those cases only in terms of whether the claim falls within that particular subsection, Section 502(a)(1)(B). Though there are cases that correctly recite the test as requiring broadly that the claim fall within any subsection of Section 502(a), repetition of the restrictive language in some benefits-due cases has nevertheless led to some confusion as to whether *only* Section 502(a)(1)(B) cases are completely preempted. This is the misguided argument Johnson makes here—that her claim is not for benefits-due and therefore does not fall within Section 502(a). But it is actually quite clear—and has been for some time—that a state cause of action that falls within *any* of the enumerated claims in the subsections of Section 502(a) is completely preempted. See, e.g., Kalo v. Moen Inc., 93 F.Supp.2d 869, 871–73 (N.D. Ohio 2000) and Wood v. Prudential Insurance Company of America, 207 F.3d 674, 678 (3rd Cir. 2000) (citing Metropolitan Life, 481 U.S. at 66, 107 S.Ct. 1542, which was itself a benefits-due case but which held broadly that all of Section 502(a) has preemptive effect). Johnson's reliance on cases that would suggest complete preemption applies only to those claims that fall within Section 502(a)(1)(B) is misplaced. See Tovey v. Prudential Insurance Company of America, 42 F.Supp.2d 919, 925 (W.D. Mo. 1999).[2]

**2.** Johnson cites repeatedly to the three-prong test for complete preemption set forth in Tovey: (1) plaintiff must be an ERISA plan participant or beneficiary eligible to bring an ERISA claim; (2) the subject matter of the claim must be within the scope of Section

A benefits-due claim is only one of the civil actions enumerated in Section 502(a). Another type is set forth in Section 502(a)(3), which authorizes civil actions to enforce the provisions of ERISA. See 29 U.S.C. 1132(a)(3). One such ERISA provision enforceable under Section 502(a) is Section 510, which prohibits employment decisions that discriminate against a participant for exercising ERISA rights or that interfere with a participant attaining benefits to which he or she is entitled:

> It shall be unlawful for any person to discharge, fire, suspend, expel, discipline, or discriminate against a participant or beneficiary for exercising any right to which he is entitled under the provisions of an employee benefit plan ... or for the purpose of interfering with the attainment of any right to which such participant may become entitled under the plan ... The provisions of [Section 502 of the Act] shall be applicable in the enforcement of this section.

29 U.S.C. 1140.

▆▆▆ It is well-settled that Section 502(a) is the exclusive remedy for rights guaranteed under ERISA, including those provided by Section 510. See Ingersoll–Rand v. McClendon, 498 U.S. 133, 144, 111 S.Ct. 478, 112 L.Ed.2d 474 (1990); Pilot Life Insurance Company v. Dedeaux, 481 U.S. 41, 54, 107 S.Ct. 1549, 95 L.Ed.2d 39 (1987); McLain v. Andersen Corporation, 567 F.3d 956, 964–65 (8th Cir. 2009); Graham v. Hubbs Machine and Manufacture, Inc., 49 F.Supp.3d 600, 609–11 (E.D. Mo. 2014). Thus, ERISA completely preempts state civil actions in which a plan participant claims her employer engaged in conduct that is prohibited by Section 510. Ingersoll–Rand, 498 U.S. at 142–45, 111 S.Ct. 478. This type of claim falls squarely within the ambit of Section 510 of ERISA and, therefore, is necessarily within the scope of Section 502(a). Id. at 142, 111 S.Ct. 478; Wood, 207 F.3d at 677–78. The fact that Johnson's claim is pled in terms of a state anti-discrimination statute, the MHRA, and that she does not seek reinstatement of her ERISA benefits as part of the relief requested in her petition are irrelevant to a determination of preemption. See Ingersoll–Rand, 498 U.S. at 144, 111 S.Ct. 478; see also Wood, 207 F.3d at 678. Rather, we look to the true nature of the issues underlying the claim: if "it is clear or may fairly be assumed that the activities" on which Johnson bases her claim for relief are protected by Section 510, then her claim is completely preempted because it arises under ERISA. See Ingersoll–Rand, 498 U.S. at 145, 111 S.Ct. 478.

We find Wood instructive for determining the true basis of Johnson's claim. There, the plaintiff alleged discrimination based on a state statute, claiming that his employer terminated him to avoid paying his and his dependents' benefits knowing that he was about to become eligible for retirement and knowing that his son had a disability resulting in millions of dollars of medical bills. 207 F.3d at 676. The plaintiff argued that he was only claiming age and disability discrimination, not a benefits-defeating motive for the termination. Id. at 677. But the court found "nothing in his complaint other than an allegation that [the employer] terminated [his] employment to avoid paying health and retirement benefits." Id. The reference to the plaintiff's age was relevant "only insofar as it affected his eligibility for benefits." Id. Aside from his allegation that he was nearing retirement age, the court found there

---

502(a), "in other words, the claim must seek to recover benefits, to enforce rights, or to clarify rights to future benefits;" and (3) resolution of the claim requires interpretation of the ERISA plan documents. 42 F.Supp.2d at 925.

were no facts alleged to support a claim that his age had any bearing on the decision to terminate. Id. The court also found that the disability of the plaintiff's son was only mentioned "in the context of [the employer's] potential obligation for the high medical expenses." Id. Because the plaintiff stated no other rationale for the employer's conduct "other than to avoid paying benefits to him and his dependents," the true nature of the claim was that the plaintiff's termination "had a benefits-defeating motive." Id. Therefore, the claim fell within Section 510 of ERISA and could only be pursued in federal court. Id.

■ Felton v. Unisource Corporation is also helpful. 940 F.2d 503, 507 (9th Cir. 1991). There, though there were no allegations in the pleadings regarding an interference with ERISA benefits, one of the plaintiffs stated at deposition that his claims arose out of his employer's desire "to avoid medical insurance payments to him." Id. The court found that the plaintiff had not "offered any other theories in support" of his claims. Id. As such, the plaintiff's disability discrimination claim based on a state statute was preempted by ERISA. Id. at 509. "When the plaintiff contends that the motivating factor behind her termination was the defendant's attempt to evade benefit payments, preemption is clear." Id. at 509; see also Schultz v. Tribune ND, Inc., 754 F.Supp.2d 550, 561 (E.D.N.Y. 2010) ("Where sole reason alleged for termination was to deprive of benefits, claim labeled disability discrimination was really an ERISA action."); Davis v. Con–Way Freight Inc., 139 F.Supp.3d 1224, 1238 (D. Or. 2015) ("Where basis of case is allegation that employer 'did not want to employ a person with such expensive healthcare' that claim is clearly preempted by ERISA.")

■ Johnson's claims are clearly within Section 510 of ERISA. All of the allegations in Johnson's petition about her son's disability with respect to Lou Fusz's conduct are in the context of how expensive his healthcare costs were for Lou Fusz to cover with the insurance it provided to Johnson: she alleged that Lou Fusz was aware her son's medical costs were covered by its group health insurance policy, "was aware of incurring continuing and increasing costs associated with insuring Johnson's family as a result of [her son's] disability," was "aware of the extensive expenses it incurred as a result of insuring [her son's] medical care through Johnson" and "knew that [he] would require consistent medical monitoring, hospital stays, and treatment for his continuing disability." Johnson draws no other connection between Lou Fusz's alleged "animus" about her son's disability and her termination, except in relation to health care benefits. For instance, she does not allege that her son's disability affected her attendance or performance at work and created animus with her employer in that respect. In fact, she alleged that she normally had advance notice of her son's medical appointments and was able to schedule her days off work with advance notice to Lou Fusz and that she always received positive performance evaluations and had never been disciplined. No other facts in the petition show a rationale for the termination decision, other than Lou Fusz's knowledge of the high cost of Johnson's insurance and its desire to avoid that obligation. See Bunner v. PSE & G, 2012 WL 1044313, at *4–5 (D.N.J. Mar. 9, 2012) (report and recommendation adopted in 2012 WL 1059751 (D.N.J. Mar. 27, 2012)) (reference to age and longevity established plaintiff's entitlement to retirement benefits, but plaintiff failed to illustrate how longevity was legally relevant in any context other than showing termination had

"benefits-defeating" motive).[3]

Johnson's deposition testimony confirmed that she believed the motive for termination was to defeat benefits and that she had no other basis for her termination claim: she said she was alleging that Lou Fusz discriminated against her "based on the costs of [her son's] disability," she said she was claiming that the reason she was terminated was "to avoid paying for the medical insurance, the increasing costs of [her son's] treatment and insurance," she said that Lou Fusz was aware of the cost of her son's treatment and "the cost of the insurance covering him" when it made the decision to terminate her and she said "the desire to avoid making those payments was the motivating factor" behind her termination because they "reasoned-in having to subsidize his continuing healthcare costs."

Johnson has likewise failed, on appeal, to demonstrate that the true nature of her claim does not fall within the ambit of Section 510 of ERISA. She does not explain or point to anything in the record that shows how her son's disability was a factor in her termination in any context *other* than interfering with the attainment of ERISA benefits. Moreover, the cases she cites as being similar to hers are not. In Brand v. Kansas City Gastroenterology & Hepatology, LLC, the plaintiff asserted that his employer knew he had a disability and continually complained that his disability increased the employer's health care costs. 547 F.Supp.2d 1001, 1003 (W.D. Mo. 2008). At some point, the employer stopped providing health care coverage to the plaintiff and, when he refused to become an independent contractor (who would not be covered by insurance), he was terminated. Id. The employer argued that the plaintiff's asserted claims fell under Section 510 of ERISA. Id. The court stated that unless it is the motivating factor for termination, attempting to avoid paying benefits or interfering with the attainment of benefits is only incidental to a plaintiff's claim. Id. at 1006. It found that the heart of the plaintiff's petition in that case was not his ERISA health insurance or the denial of his benefits. Id. Thus, any reference to the loss of ERISA benefits was incidental and did not constitute a "benefits motive" for his discharge. Id. Here, however, Johnson's references to and alleged connections between her termination and defeating ERISA benefits for her and her son are not incidental. This is not the "close question" the court in Brand faced on removal, which it was required to resolve in favor of keeping the case in state court. Id.

The other cases Johnson cites are also factually distinguishable because the plaintiffs did not allege benefits-defeating motives like she does in this case. In Avenevoli v. Lockton Companies, Inc., the plaintiff made no allegation that payment of her medical expenses was a motivating favor in the discharge determinations:

> Rather, the "heart" of plaintiff's claim is that she was wrongfully discharged on the basis of her disability. Plaintiff alleges that because of her handicap, she was discriminated against by the termination of her employment with Defendant. Other than the reference to "lost benefits," as part of Plaintiff's damages, there are no other references to ERISA. Instead

---

**3.** As the federal court pointed out in dicta upon remanding this case back to state court: "[Johnson's] allegations focus almost exclusively on the termination of her benefits under [Lou Fusz's] health insurance plan," and her petition "contains ample evidence her claim may be based on [Lou Fusz's] termination of benefits." 2014 WL 7338820, at *3. Thus, we agree with Johnson's argument to the federal court for why removal was untimely—the applicability of ERISA was apparent from the time she filed her petition.

of a benefits motive, the complaint alleges that the discharge was unlawfully motivated due to Plaintiff's disability.

2008 WL 509545, at *3 (E.D. Mo. Feb. 22, 2008). In Mayfield v. Lutheran Senior Services, the plaintiff claimed he was discharged based on age and disability and in retaliation for his complaints and did not allege as a motivating factor for his discharge the employer's "desire to avoid the increased cost" of health insurance; rather, lost benefits were mentioned only in the request for relief. 2009 WL 3526361, at *2 (E.D. Mo. Oct. 26, 2009).

Even if her claim falls within Section 510 of ERISA, Johnson argues that we must also consider whether resolution of her claim requires interpretation of the ERISA plan documents, meaning that the claim must be based on no other legal duty arising independent of ERISA or the ERISA plan. See Davila, 542 U.S. at 210–13, 124 S.Ct. 2488. Where, as here, the claims are found to be based *solely* on the duty to refrain from interference with ERISA rights as expressly and specifically addressed by Section 510, there can be no other non-ERISA duty at stake. See Ull v. Fire Safety, Inc., 2009 WL 2982815, at *4 (S.D. Ill. Sept. 15, 2009). Thus, the ERISA plan is integral to Johnson's contention that she was fired to avoid the obligation of covering her son's expensive health care, and no other independent non-ERISA legal duty is implicated in this case. As discussed above, if we take away any reference to her healthcare benefits, there is nothing left to Johnson's claim because she does not allege any other link between her son's disability and her termination.

Because the true nature of Johnson's associational disability discrimination claim under the MHRA is actually a claim that Lou Fusz terminated her in an effort to avoid paying her son's health insurance, it is squarely within the ambit of Section 510 of ERISA. Point IV is denied. Because we find that her claim is completely preempted, Johnson's points on appeal relating to express preemption—Points I, II and III—are denied as moot.[4]

Johnson next argues that even if her claim is completely preempted by ERISA, it should not have been dismissed with prejudice. She contends that the failure to timely remove the case to federal court made federal jurisdiction unavailable, "leaving the state court with jurisdiction." This argument is wholly without merit. Having found that the true nature of Johnson's claim falls within Section 510, and thereby Section 502(a)(3), of ERISA, it is under the exclusive jurisdiction of the federal courts. See 29 U.S.C. 1132 (e) (all actions except those under Section 502(a)(1)(B) are within exclusive jurisdiction of federal courts). Thus, it was subject to being re-characterized as a federal claim and removed to federal court.[5] The fact that Lou Fusz failed to remove the case in a timely manner, however, does not deprive the federal court of jurisdiction; rather, it merely deprived the defendant of the ability to remove the case. Johnson could still file an original action in federal court, assuming she is within the statute of limitation.[6] Moreover, the failure to timely

---

**4.** The express preemption arguments Johnson incorporated into her points on complete preemption are misplaced, and we reject them.

**5.** Re-characterization of a completely preempted state law claim to a federal claim is the way federal courts work around the federal well-pleaded complaint rule to effectu-

ate removal. See Lister, 890 F.2d at 943. The concept of re-characterization does not, however, confer jurisdiction to the state court over a federal claim.

**6.** ERISA does not have its own statute of limitations, so courts apply the most analogous state statute when determining whether

remove the case to federal court does not in any way create state court jurisdiction over a claim that is within the exclusive jurisdiction of federal courts. See, e.g., Jefferson–Pilot Life Insurance Company v. Krafka, 50 Cal.App.4th 190, 57 Cal.Rptr.2d 723, 728 (1996) (finding inability to remove action to federal court "does not confer subject matter jurisdiction on the state courts" over ERISA claim within Section 502(a)(3)). Johnson's arguments to the contrary are without merit and her citations in support thereof are totally distinguishable as they all involved, or were discussing a situation in which, the state court would have *concurrent* jurisdiction over a benefits-due claim under Section 502(a)(1)(B). See Lister v. Stark, 890 F.2d 941, 943 (7th Cir. 1989); Maupin v. Hallmark Cards, 894 S.W.2d 688, 692 (Mo. App. E.D. 2007); Estate of Carroll v. Continental Casualty Company, 857 S.W.2d 848, 857 (Mo. App. W.D. 1993); see also Manning v. Wal–Mart Stores East, Inc., 304 F.Supp.2d 1146, 1148 (E.D. Mo. 2004) (reciting general rule about resolving doubts in removal action in favor of state court jurisdiction in diversity jurisdiction case, not an ERISA preemption case).[7] Because the state court lacked subject matter jurisdiction of Johnson's claim, dismissal was the proper remedy. See, e.g., Summers v. United States Tobacco Company, 214 Ill.App.3d 878, 158 Ill.Dec. 412, 574 N.E.2d 206, 211 (1991) (affirming dismissal where court lacked subject-matter jurisdiction to hear claim under Section 510 of ERISA).

Point V is denied.

The judgment is modified to be a dismissal of the petition without prejudice, instead of with prejudice. Though the issue of the state court's subject matter jurisdiction has been conclusively and finally decided—precluding Johnson from bringing this claim in its current form in a state court—there has been no ruling on the merits of her claim. Thus, dismissal without prejudice is appropriate. As noted above, nothing about the dismissal prevents Johnson from filing the ERISA claim in the appropriate forum, a federal district court. The judgment, as modified, is affirmed.

## Unpaid Overtime Claim under Missouri Minimum Wage Law

The other claim in Johnson's petition was that there were numerous weeks during her employment with Lou Fusz in which she worked in excess of forty hours a week but did not receive pay at the premium rate for those overtime hours as mandated by the Missouri Minimum Wage Law ("MMWL"). See Section 290.505.1 RSMo. She alleged that she routinely handled calls from her customers after hours, which she did not report on her time card. She alleged Lou Fusz was aware of this extra work, but failed to pay her appropriately. She also claimed that Lou Fusz manipulated her time sheets. Lou Fusz sought and was granted summary judgment on this claim, arguing that it had no knowledge Johnson was working overtime and that any amount of uncompensated time was de minimus. This appeal follows.

---

a cause of action thereunder is time-barred. Federal courts in Missouri have held that Section 510 claims under ERISA are subject to the five-year statute of limitations set out in Section 516.120 RSMo. Haynes v. BIS Frucon Engineering, Inc., 2009 WL 995460, at *6–7 (E.D. Mo. Apr. 14, 2009); Pendleton v. Quiktrip Corporation, 2007 WL 607662, at *3 (E.D. Mo. Feb. 22, 2007); Heideman v. PFL, Inc., 904 F.2d 1262, 1268 n.4 (8th Cir. 1990).

7. When there is concurrent jurisdiction, if the case is remanded to the state court after failed removal and the state court determines that ERISA preempts, then the state court does not lose jurisdiction but merely applies federal ERISA law. Lister, 890 F.2d at 943 n.1.

To establish a claim for unpaid overtime under the MMWL, Johnson must prove that she performed the work for which she was not compensated and that Lou Fusz had actual or constructive knowledge of that work. See Stanbrough v. Vitek Solutions, Inc., 445 S.W.3d 90, 97 (Mo. App. E.D. 2014). An employer is liable for employees' unpaid overtime work only if the employer "knew or should have known they were working overtime." Id. "An employer who knows that an employee is working overtime cannot stand idly by and allow an employee to perform overtime work without proper compensation." Id. (internal quotation marks and citations omitted). And, once the employer knows about the overtime work, it cannot deny compensation simply because the employee did not properly record or claim the overtime hours. Id. at 98 (internal quotation marks and citations omitted).

We review the propriety of summary judgment de novo. ITT Commercial Finance Corporation v. Mid–America Marine Supply Corporation, 854 S.W.2d 371, 376 (Mo. banc 1993). As the defending party to this claim, Lou Fusz sought to establish a right to summary judgment by demonstrating undisputed facts that negated the knowledge element of Johnson's claim. See id. at 381. It was then Johnson's burden as the non-movant to demonstrate that the facts on which the movant relied are actually in dispute. See id. at 382. Failure to do so results in summary judgment for the movant. Id.

Lou Fusz presented with its summary judgment the affidavits of its human resources manager and of Johnson's supervisor, both of whom attested to that fact that Lou Fusz had "no knowledge that [Johnson] was working overtime by taking brief after-hours phones calls." In her response, Johnson denied that fact and attempted to controvert it with her deposition testimony. Therein, she testified that Lou Fusz receptionists were forwarding calls to her personal cell phone after she had clocked out and left work. She said she had asked the receptionists to forward these after-hours calls to her office phone voicemail instead of to her personal cell phone. She also had a conversation with her supervisor at least twice, in which she told him that the calls were "taking minutes away from my personal calling because of the dealership forwarding calls to my cell phone and I was off the clock." She said the supervisor "would talk to the receptionist and it would be okay for about two weeks and then it would start up again." She could not recall when those conversations with the supervisor occurred, but she admitted she never followed up or otherwise ever tried to have the time she spent on these after-hours phone calls added to her time sheet. She claimed there was no option for doing that and that she was just doing her job and did not want to "rock the boat."

Johnson asserted that her deposition showed that Lou Fusz was aware that she was "working after hours taking customer phone calls and was not being adequately compensated for working overtime" and therefore that fact was "in dispute" and summary judgment was improper. Lou Fusz responded by admitting that it knew that Johnson handled the after-hours calls and that she had talked to her supervisor about it. But, it pointed out, that was not determinative of whether Lou Fusz knew that the after-hours calls "caused her to work more than forty hours in any given week." Lou Fusz correctly pointed out that Johnson only said she told the supervisor about handling off-the-clock phone calls and nowhere did she testify that she told anyone at Lou Fusz that handling those phone calls resulted in her working more than forty hours a week. Thus, Johnson has failed to demonstrate a genuine issue

regarding the material fact asserted by Lou Fusz: namely that, although it was aware Johnson was fielding work calls *after hours*, Lou Fusz was not aware this was causing her to work *overtime*. At worst, therefore, Lou Fusz may have known Johnson was not being compensated for non-overtime hours (known as "straight time" or "gap time"). But that limited knowledge does not satisfy the knowledge element of her MMWL claim for unpaid overtime, and unpaid straight time is not actionable under that statute. Terrell v. First Student Mgmt. LLC, 2016 WL 6679847 at *3 (E.D. Mo. Nov. 14, 2016). As the quoted language from Stanbrough above demonstrates, knowledge that the employee worked overtime is required to hold the employer responsible on the employee's unpaid overtime claim. See 445 S.W.3d at 97.

 Johnson also asserted in response to the motion for summary judgment that an assistant officer manager at Lou Fusz "overrode [her] time entries to show [she] worked forty hours or less when she actually recorded over forty hours of work," citing her deposition testimony and her time sheets. She said that sometimes the office manager would call her to see if the overtime Johnson recorded had been authorized; Johnson was aware overtime was required to be authorized by Lou Fusz. But Johnson explained that she sometimes got "stuck" with a customer or in traffic and could not clock out in time to stay within forty hours. In those situations, the office manager would "knock down" her time sheet to reflect only forty total hours for the week. In her deposition, as Lou Fusz points out in response to this assertion, Johnson could only identify two weeks in which her time was reduced. Johnson admitted that in both of these instances, "less than one hour of time was removed from her hours worked."

 Even if Lou Fusz was aware that the office manager manipulated Johnson's time sheet on those two isolated occasions, it amounts to knowledge of at most two hours of unpaid overtime. Lou Fusz claims this was de minimus. When evaluating whether work performed by an employee is de minimus—and therefore can be disregarded by the employer—"courts typically consider the amount of time spent on the extra work, the practical administrative difficulties of recording additional time, the regularity with which the additional work is performed, and the aggregate amount of compensable time." Kellar v. Summit Seating Inc., 664 F.3d 169, 176 (7th Cir. 2011).[8] Here, the amount of extra weekly work was at most one hour in two different weeks, or at most two total hours of uncompensated time. Thus, it was a minimal amount individually and in the aggregate and did not occur regularly. Also, while not necessarily difficult to record, the time was removed from her time sheet, according to Johnson, for the administratively justifiable reason that it had not been authorized. Under these circumstances, Lou Fusz's knowledge of such a de minimus amount of unpaid overtime is insufficient to support Johnson's claim under the MMWL.

Points VI and VII are denied.

The summary judgment entered on the MMWL claim is affirmed.

Angela T. Quigless, P.J. and Lisa S. Van Amburg, J., concur.

---

8. Contrary to Johnson's claim, the de minimus doctrine has been applied as a defense to MMWL claims for unpaid overtime. See Rickard v. U.S. Auto Protection, LLC, 2013 WL 5671342 at *4 (E.D. Mo. Oct. 17, 2013).